**UNITED STATES of America**

**v.**

**Jeffrey BRADY, Raymond Gareis, Jeffrey Brady, Appellant.**

**No. 95-3660.**

United States Court of Appeals, Third Circuit.

Argued May 10, 1996.

Decided June 28, 1996.

Shelly Stark, Federal Public Defender, Michael D. Bartko (argued), Asst. Federal Public Defender, Pittsburgh, PA, for Appellant.

Frederick W. Thieman, United States Attorney, Bonnie R. Schlueter (argued), Asst. U.S. Attorney, Pittsburgh, PA, for Appellee.

Before: GREENBERG, ALITO and McKEE, Circuit Judges.

## OPINION OF THE COURT

McKEE, Circuit Judge.

Jeffrey Brady appeals from an Order of the district court which revoked his supervised release and sentenced him to serve 12 months plus one day of imprisonment followed by a three year term of supervised release. Brady contends that by imposing a term of supervised release following the expiration of his term of imprisonment, the district court applied an amendment to the Sentencing Reform Act, 18 U.S.C. § 3551–86, that was not in effect when he was originally sentenced, and, therefore, the district court's sentence violates the Ex Post Facto Clause of the United States Constitution.

For the reasons that follow we will affirm the order of the district court.

### I.

On February 19, 1992, a grand jury in the Western District of Pennsylvania indicted Jeffrey Brady and Raymond Gareis for knowingly, intentionally, and unlawfully possessing cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(C). On April 13, 1992, Brady pleaded guilty to the charge, and on February 23, 1993, the district court sentenced Brady to a term of 15 months imprisonment followed by 5 years of supervised release. After serving part of his sentence in a Federal Correctional Institution and part in a halfway house, Brady was released from Bureau of Prisons custody on May 2, 1994, and began his 5 year term of supervised release.

On September 8, 1995, the United States Probation Office filed a Petition on Probation and Supervised Release alleging that Brady had violated the terms of his supervised release by, among other things, testing positive for using cocaine and being arrested for attempted burglary by a police officer who observed him committing the offense. The violations occurred in July and August of 1995. Brady was arrested on the violation charges in Pennsylvania in September of 1995, and on November 17, 1995, a hearing was held in the district court for the Western District of Pennsylvania. At that hearing, Brady admitted that he had violated the terms of his supervised release; and he agreed to its revocation and the imposition of a term of imprisonment of 12 months plus one day.

The district court found Brady in violation of his supervised release, revoked the term of supervised release, and imposed a 12 month plus one day prison term to be followed by a 36 month term of supervised release. Brady objected to the imposition of the 36 months of supervised release, and argued that it was an improper ex post facto punishment. However, the district court rejected that contention. This appeal followed.

## II.

Our review of the district court's determination that a legislative act does not violate the ex post facto prohibition is plenary. *Government of the Virgin Islands v. D.W.,* 3 F.3d 697, 698 n. 2 (3d Cir.1993).

When Brady was originally sentenced on February 23, 1993, the district court could not impose a new term of supervised release when an original term of supervised release was revoked and imprisonment imposed as a sanction. 18 U.S.C. § 3583(e)(1988 & Supp. IV); *United States v. Malesic,* 18 F.3d 205 (3d Cir.1994). However, after Brady began serving his original five year term of supervised release, but prior to his violation of that supervised release in July and August of 1995, 18 U.S.C. § 3583 was amended and a new subsection was enacted authorizing a district court to impose a new term of supervised release upon a revocation of supervised release. The amendment reads:

> **(h) Supervised release following revocation.—**
>
> When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

18 U.S.C. § 3583(h)(1995 Supp.).

Brady contends that the imposition of the consecutive term of 36 months supervised release violates the ex post facto clause of the United States Constitution because it is an additional punishment for his crime that could not have been imposed when he committed that crime.

Article I of the United States Constitution prohibits both the Congress and the states from passing any "ex post facto Law." *See* Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. An ex post facto law is one "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Cummings v. Missouri,* 4 Wall. 277, 325–326, 18 L.Ed. 356 (1866). The ex post facto clauses were included in the Constitution "to assure that federal and state legislatures were restrained from enacting arbitrary or vindictive legislation," *Miller v. Florida,* 482 U.S. 423, 429, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987), and to ensure

that legislative enactments "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham,* 450 U.S. 24, 28–29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). Justice O'Connor, writing for a unanimous Court, has summarized the purposes of the ex post facto clauses as follows:

> Thus, almost from the outset, we have recognized that central to the ex post facto prohibition is a concern for 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'

*Miller v. Florida,* 482 U.S., at 430, 107 S.Ct. at 2451 (quoting *Weaver v. Graham,* 450 U.S., at 30, 101 S.Ct. at 965.)

Two conditions must be satisfied before a law can be deemed to transgress the ex post facto prohibition. First, the law "must be retrospective, that is, it must apply to events occurring before its enactment." *Weaver v. Graham,* 450 U.S., at 29, 101 S.Ct. at 964. Second, the change in the law must "alter[ ] the definition of criminal conduct or increase[ ] the penalty by which a crime is punishable." *California Department of Corrections v. Morales,* — U.S. —, — n. 3, 115 S.Ct. 1597, 1602 n. 3, 131 L.Ed.2d 588 (1995).[1]

Brady argues that the enactment of 18 U.S.C. § 3583(h)(1995 Supp.) runs afoul of both concerns. However, we need not address his claim that he must have been afforded knowledge of the increased penalty at the time of his original offense because he was not prejudiced by the enactment. Before the enactment of subsection (h), a defendant who violated supervised release could be sentenced to imprisonment under 18 U.S.C. § 3583(e)(3) for up to the maximum term of supervised release for a given offense, without any credit for the time spent on supervised release. Brady was convicted of possession with intent to distribute, a class A felony, and thus under prior law, he could have been sentenced to up to five years imprisonment for violation of his supervised release.

Under the new subsection (h), the district court may impose a new term of consecutive supervised release. However, the new term of supervised release may not exceed the maximum term of supervised release authorized for the offense, minus the term of imprisonment imposed upon revocation of the original term of supervised release. Thus, under the new law, Brady could have been sentenced to a combination of imprisonment and supervised release that was no greater than five years. Accordingly, the maximum period of time that a defendant's freedom can be restrained is the same. In Brady's case, that period is five years whether or not subsection (h) is applied.

Moreover, a law is retrospective if it "changes the legal consequences of acts completed before its effective date." *Miller v. Florida,* at 430, 107 S.Ct. at 2451 (quoting *Weaver v. Graham,* at 31, 101 S.Ct. at 965). When Brady committed his crime, he was on notice that, under then existing law, he could be sentenced to a 5 year term of supervised release upon the expiration of a term of imprisonment. He also knew that if he violated that supervised release, it could be revoked and he could be incarcerated for up to 5 years. Congress' enactment of amended subsection (h) does not change the amount of time Brady's liberty can be restrained for violating supervised release. It remains 5 years. The only difference is that now Brady's liberty can be restrained with a mix of imprisonment and supervised release. In either event, the legal consequences of his criminal conduct are identical, i.e., he faces the possibility of a 5-year term of loss of

1. Prior to *California Dept. of Corrections v. Morales,* the Court had always held that there were "two critical elements" which must be present for a criminal law to be *ex post facto,* i.e., the law must be retrospective and "it must disadvantage the offender affected by it." *See, e.g., Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). However, in *California Dept. of Corrections v. Morales,* the Court shifted the "focus of the ex post facto inquiry" away from whether the legislative change "produces some sort of ambiguous 'disadvantage'" towards an inquiry into whether the legislative change "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." — U.S. —, — n. 3, 115 S.Ct. 1597, 1602 n. 3, 131 L.Ed.2d 588 (1995).

freedom both before the enactment of subsection (h) and after the enactment of subsection (h). Therefore, the availability of supervised release in no way increased the amount of time that Brady was exposed to incarceration. Thus, we fail to see how subsection (h) increased the penalty for his original offense, and we find no ex post facto violation.[2]

III.

For the above reasons, the order of the district court will be affirmed.

2. At oral argument, appellant contended, for the first time, that application of amended subsection (h) violates the *ex post facto* prohibition because, absent the amendment, the district court would have been required by the Sentencing Guidelines to impose only the term of imprisonment set forth in U.S.S.G. § 7B1.4 and would not have been authorized to impose a term of supervised release. In support of that contention, appellant argued that the district court was bound, in accordance with *Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), to follow the policy statements set forth in Chapter Seven of the Guidelines. *Stinson* did in fact hold that commentary interpreting Guidelines provisions has the force of law and must be followed by the district courts "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." 508 U.S. at 38, 113 S.Ct. at 1915.

However, the policy statements set out in Chapter Seven of the Guidelines are distinguishable from the commentary at issue in *Stinson* in that they do not interpret guidelines provisions. *See United States v. Hurst,* 78 F.3d 482 (10th Cir.1996); *United States v. Caves,* 73 F.3d 823 (8th Cir.1996); *United States v. Escamilla,* 70 F.3d 835 (5th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 1368, 134 L.Ed.2d 533 (1996); *United States v. West,* 59 F.3d 32 (6th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 486, 133 L.Ed.2d 413 (1995); *United States v. Davis,* 53 F.3d 638 (4th Cir.1995); *United States v. Hill,* 48 F.3d 228 (7th Cir.1995); *United States v. Milano,* 32 F.3d 1499 (11th Cir.1994); *United States v. Denard,* 24 F.3d 599 (4th Cir.1994); *United States v. Sparks,* 19 F.3d 1099 (6th Cir.1994); *United States v. Anderson,* 15 F.3d 278 (2d Cir.1994); *United States v. O'Neil,* 11 F.3d 292 (1st Cir.1993); *United States v. Levi,* 2 F.3d 842 (8th Cir.1993); *United States v. Hooker,* 993 F.2d 898 (D.C.Cir. 1993). Thus, as every circuit court that has addressed Chapter Seven of the Guidelines, both before and after *Stinson,* has held, we believe that the policy statements set out in Chapter Seven are not binding on the district courts but are merely advisory.

Additionally, the Sentencing Commission itself has indicated, in its introduction to Chapter Seven, that the policy statements therein are advisory only. The Commission wrote that the policy statements in Chapter Seven are "the first step in an evolutionary process" designed to provide "greater flexibility to both the Commission and the courts." U.S.S.G. Ch. 7, Pt. A5, A3(a). The introduction concludes: "The Commission expects to issue revocation guidelines after judges, probation officers, and practitioners have had an opportunity to apply and comment on the policy statements." U.S.S.G. Ch.7 Pt. A5.

Finally, even though the revocation range set forth in U.S.S.G. § 7B1.4 provides only a term of imprisonment upon revocation and not a consecutive term of supervised release, that Guideline would not, under *Stinson,* be binding upon the district court because it would violate a federal statute, i.e., 18 U.S.C. § 3583(h).

Thus, even if Brady had raised this argument in a timely manner, we would have to conclude that the contention that U.S.S.G. § 7B1.4 prevents the application of 18 U.S.C. § 3583(h) to his situation is without merit.