**Gregory L. FORSYTHE, Appellant,**

v.

**Gilbert WALTERS, Superintendent.**

No. 00–3352.

United States Court of Appeals,
Third Circuit.

Argued Feb. 11, 2002.

Decided May 3, 2002.

Stephen D. Brown, David J. Caputo, Jennifer E. Dubas (Argued), Dechert Price & Rhoads, Philadelphia, PA, for Appellant.

Scott A. Bradley (Argued), Office of the Attorney General, Pittsburgh, PA, for Appellee.

Before MANSMANN,* McKEE, and BARRY, Circuit Judges.

*OPINION OF THE COURT*

McKEE, Circuit Judge.

Gregory Forsythe appeals the district court's March 23, 2000 Memorandum Order granting defendant's motion to dismiss. For the reasons that follow, we will affirm.[1]

### I.

Inasmuch as we write only for the parties, we need not recite the factual background of this case. Forsythe argues that the district court erred in finding that the allegations in his Complaint do not establish a constitutional violation when viewed in the light most favorable to him.

### A.

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. However, the Supreme Court has qualified this by stating that the Fifth Amendment does not apply in the absence of *compulsion.* See Lefkowitz v. Cunningham, 431 U.S. 801, 806, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977) ("the touchstone of the Fifth Amendment is compulsion.").

Although we have not previously had occasion to address the implications of the Fifth Amendment in the prison pre-release context, the issue has been raised in an analogous setting. In *Ohio Adult Parole Auth. v. Woodard,* 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998), the Supreme Court examined the constitutionality of Ohio's clemency process for death row inmates. There, an inmate could voluntarily request a clemency interview, but the inmate was not given use immunity as to any statements made during the interview. Therefore, parole authorities could draw adverse inferences from an inmate's failure to answer questions. Inmates sued, alleging that the procedure was a violation of their Fifth Amendment protection against self-incrimination. The Supreme Court held that since the interview was voluntary, statements were not *compelled* within the meaning of the Fifth Amendment. The Constitution did not, therefore, prohibit the parole authorities from drawing an adverse inference from an inmate's refusal to answer questions during the clemency interview. *See Woodard,* 523 U.S. at 286, 118 S.Ct. 1244. The Court acknowl-

* The Honorable Carol Los Mansmann died on March 9, 2002, after this case had been argued, but prior to an opinion being rendered. However, where a case is assigned to a three judge panel and one judge later dies, the remaining two judges may decide the case if they agree on the disposition. *See* 28 U.S.C. § 46(b) (2002); *Murray v. Nat'l Broadcasting Co.,* 35 F.3d 45, 47 (2d Cir.1994).

1. Our review of a district court's grant of a Rule 12(b) motion to dismiss is plenary, *See Wilson v. Quadramed Corp.,* 225 F.3d 350, 353 (3d Cir.2000).

edged that an inmate may feel pressured to answer questions and cooperate in order to improve the chance of clemency. The Court held, however, that such pressure did not implicate the Fifth Amendment. *See id.* at 288, 118 S.Ct. 1244.

Moreover, courts have rejected the idea that an inmate has a "right" to admission into a parole-related program. Rather, courts have characterized parole merely as a "benefit" that a state may choose to provide to an inmate. *See, e.g., Ainsworth v. Risley,* 244 F.3d 209, 216 (1st Cir.2001) (characterizing parole as a "benefit" which a state may condition with eligibility requirements pertaining to the admission of guilt); *Doe v. Sauer,* 186 F.3d 903, 906 (8th Cir.1999) (upholding denial of parole to an inmate who refused to admit guilt).

In addition, inasmuch as an inmate's sentence is the maximum period of confinement imposed by the sentencing court, denial of parole does not amount to a change of sentence. In fact, parole has traditionally been viewed as "time served" on the street. *See, e.g., Weaver v. Pa. Bd. of Probation and Parole,* 688 A.2d 766, 769 (Pa.Commw.Ct.1997) ("[a] grant of parole does not eliminate a prisoner's sentence, but instead the prisoner continues to serve his sentence during which time he or she is the subject of society's rehabilitation efforts under supervision.").

██ Forsythe was not "penalized" within the meaning of the Fifth Amendment because his sentence was never changed.[2] Therefore, we find that conditioning Forsythe's acceptance into the pre-release program upon an admission of guilt does not violate the Fifth Amendment.[3]

Forsythe's situation is similar to that of inmates seeking clemency under the regime the Court examined in *Woodard.* Consideration for clemency, like consideration for defendant's pre-release program, is voluntary. Since both are voluntary programs, they lack the compulsion that is the condition precedent to violating the privilege against self-incrimination. Both programs are "benefits" afforded to eligible inmates; there is no right to be admitted to either.

## C.

Forsythe argues, in the alternative, that his denial from the pre-release program violates the Ex Post Facto Clause. He asserts that his application was denied because the victim's family was allowed to comment on his application pursuant to the Crime Victims Rights Act of 1992 ("CVRA"). Since that law was not enacted until after this crime was committed, Forsythe argues that it operated as an illegal ex post facto law to preclude him from being admitted into the pre-release program.[4]

**2.** In rejecting Forsythe's claim, we are not unmindful of the fact that it is clearly more desirable to serve one's sentence on the street (i.e.parole), than behind the bars of a prison or a county jail. However, our recognition of that reality does not alter our reading of the Supreme Court's holding in *Woodard,* and the other cases we have set forth above.

**3.** We also reject Forsythe's attempt to view this action through the lens of *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). *Turner* relates only to prison regulations that impinge on constitutionally pro-

tected rights. Admission to the pre-release program is not a constitutionally protected right.

**4.** Although Forsythe now has court appointed counsel, he did not have counsel when he drafted his Complaint. The district court did not specifically address the ex post facto claim, presumably because Forsythe did not clearly separate it from the due process argument in his Complaint. We are mindful, however, that pleadings drafted by pro se litigants are held to a less stringent standard than pleadings drafted by attorneys. *See*

Article I of the Constitution prohibits states from enacting ex post facto laws. *See* U.S. CONST. Art. I, cl. 1. The Supreme Court has explained that an ex post facto law exacts a "punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed[.]" *Cummings v. Missouri*, 4 Wall. 277, 71 U.S. 277, 325–26, 18 L.Ed. 356 (1866); *see also United States v. Brady*, 88 F.3d 225, 228 (3d Cir.1996).

■ We have already discussed why conditioning admission to the pre-release program upon an admission of responsibility does not increase Forsythe's penalty. Moreover, it does not penalize his conduct at all, let alone penalize conduct that was previously legal. Courts have consistently held that restrictions that make it harder for inmates to qualify for programs such as parole, do not constitute "punishment" within the meaning of the Ex Post Facto Clause. *See, e.g., Calif. Dept. of Corrections v. Morales*, 514 U.S. 499, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (finding that a California law that retroactively decreased the frequency of parole suitability hearings did not constitute punishment under the Ex Post Facto Clause); *Cohen v. Horn*, No.Civ.A.97–7175, 1998 WL 834101, at *4 (E.D.Pa. Dec.2, 1998) (finding that a change in the factors used by Pennsylvania's parole authority to evaluate whether an inmate is granted parole does not constitute a "law" for purposes of the Ex Post Facto Clause.). Likewise, we find that application of the CVRA does not exact a

punishment and therefore the CVRA can not violate the Ex Post Facto Clause.

### C.

■ Lastly, Forsythe argues that requiring an admission of guilt violated his constitutional right to access the courts because an admission of guilt would make his post-conviction cases meaningless.[5] Forsythe also argues that Walters denied his pre-release application to retaliate against him for initiating post-conviction litigation.

Under *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), prison inmates have a constitutional right to access the courts under the First Amendment. *See Bounds*, 430 U.S. at 824–25, 97 S.Ct. 1491. This access must be "meaningful." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). However, an inmate must first demonstrate an actual injury rising to the level of "hinder[ing] . . . [one's] effort's to pursue a legal claim," in order to establish such a First Amendment violation. *Id.* We analyzed this requirement in *Oliver v. Fauver*, 118 F.3d 175 (3d Cir.1997). There, we held that one must show an injury "such as the loss or rejection of a legal claim[.]" *Oliver*, 118 F.3d at 177.

Forsythe has not made that showing. He did not suffer any injury-because he did not make any admission on his pre-release application. His post-conviction litigation has now apparently all been resolved against him. However, this could not have been a result of any statements of

*Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Consequently, we find that Forsythe's ex post facto claim was preserved, and we therefore address its merits.

5. Forsythe's counsel acknowledged at oral argument that after briefs were filed in this case, Forsythe's remaining collateral appeals were all resolved against him. Therefore, Forsythe's First Amendment argument is moot. We will nevertheless address the First Amendment argument to the extent that Forsythe argues that his access to the courts was impeded before that litigation was resolved.

guilt that he made in his pre-release application because he did not make any. Therefore, under *Lewis*, Forsythe has not shown an actual First Amendment injury.

■■■ Moreover, although denying an application to a pre-release program in retaliation for filing a lawsuit could be a First Amendment violation, Forsythe presents only conclusory allegations of retaliation. There is no evidence of any nexus between those two occurrences whatsoever, and Forsythe's claim of retaliation can therefore be summarily dismissed. Consequently, we hold that the district court properly dismissed Forsythe's retaliation claim under the First Amendment.[6]

## V.

For all the reasons set forth herein, we will affirm the district court's memorandum order granting dismissal.

---

**6.** At oral argument, Forsythe's counsel amplified her First Amendment theory. She now argues that the pre-release program violates Forsythe's First Amendment right to freedom of speech by compelling him to make statements he does not believe in; namely, that he is guilty. However, this does not alter our analysis because, as we have already stated, there was no compulsion. Therefore, Forsythe was not forced to say anything, and we may summarily reject this claim.