**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jeffrey B. MARVIN, Defendant–Appellant.**

**No. 93–3938.**

United States Court of Appeals, Seventh Circuit.

Argued May 12, 1994.

Decided June 30, 1994.

Larry Wszalek (argued), Office of the U.S. Atty., Madison, WI, for plaintiff-appellee.

Reesa Evans (argued), Madison, WI, for defendant-appellant.

Before ESCHBACH, FLAUM and RIPPLE, Circuit Judges.

ESCHBACH, Circuit Judge.

Defendant Marvin appeals his sentence for wire fraud. 18 U.S.C. § 1343. Specifically, Marvin contends the district court erred in refusing him a two-point offense level reduction pursuant to United States Sentencing Guidelines § 3E1.1, and improperly calculated the amount of loss his defrauded "investors" actually suffered under Sentencing Guidelines § 2F1.1. For the reasons below, we affirm.

Jeffrey Marvin was a con artist. In the original six-count indictment against him, he was charged with defrauding by wire five investors. His *modus operandi* was generally the same with respect to all five investors. He placed ads in newspapers promising sparkling investment returns to which each of the unwary investors responded.[1] He would then describe his business plan to sell self-help manuals through telemarketing and radio ads, falsely representing to some that he had a copyrighted manual ready for sale, and providing other investors with fictitious radio test results to further pique their interest. For their respective investments, Marvin promised *each* of them a 50% share in his company, J.B. Publications, Inc. Marvin's entire operation was a scam, and the five investors lost all of their investment, totalling $72,043. Pursuant to a plea agreement, Marvin pled guilty to one count of wire fraud, and was sentenced to 27 months' imprisonment with three years' supervised release.

Marvin first argues that the sentencing judge improperly included, in determining the amount of loss his "investors" suffered under Sentencing Guidelines § 2F1.1, amounts he spent on "legitimate business expenses". Of the $72,043 the investors lost, Marvin claims $3,000–4,000 for radio ads, $2,000 to a telemarketing agency, and $2,000 in legal fees were legitimate business expenses not properly included in the total loss calculations under § 2F1.1. Subtracting these amounts would have reduced the total loss to $64,043 and resulted in a one-point reduction in Marvin's offense level. We review a sentencing judge's factual findings for clear error, and afford due deference to his

---

1. For example, one of the ads Marvin placed in the New York Times read: "Top secret, I worked for him, he made millions, I took the idea and now I'm selling, call Jeff at 414/739–2154." An- other in the Minneapolis Star Tribune stated: "I will return $4,000,000 in one year to silent partner with $24,000 investment. Call 715/282– 6320, J.B. Morgan."

application of the Sentencing Guidelines. *United States v. Thomas,* 11 F.3d 1392, 1399 (7th Cir.1993) (quoting *United States v. Randall,* 947 F.2d 1314, 1320 (7th Cir.1991)).

Marvin cites our decision in *United States v. Schneider,* 930 F.2d 555, 558 (7th Cir. 1991), in which we analyzed two different types of fraud for purposes of determining "loss" under § 2F1.1. There we distinguished between the true con artist, who has no intention of performing the undertaking he has promised, from the less harmful con artist who initially lies to get a contract, but fully intends to perform the underlying services promised. *Schneider* involved a husband and wife who lied about their past criminal histories to get government contracts. The government argued that the amount of loss should be the full contract price. However, we concluded that because the defendants actually intended and were able to perform the services promised, that the government's loss on the contract for purposes of § 2F1.1 was limited to the amount necessary to extricate themselves from the contract plus any amounts already paid and lost.

■ As is obvious, Marvin's situation is dramatically different from the Schneiders'. As the district court concluded:

> There is no means by which a finding can be made based upon the pervasive fraudulent conduct of this defendant that some portion of an intended investment was made for a legitimate purpose which should then be provided the defendant as an offset. Whether the scheme be [labeled] a loan or an investment it was a scheme to defraud the investors, and whether the monies were used for the payment of attorney's fees or actual advertising costs by the investors they cannot be considered other than funds which would not have been paid had not the defendant perpetrated his fraudulent scheme upon them.

**2.** Originally, Marvin requested that we follow the Sixth Circuit in holding that post-offense conduct unrelated to the crime to which the defendant has pled guilty should not be considered in the determination of acceptance of responsibility.

Based on our review of the record, we agree. Even if we could agree that these expenditures were "legitimate" as Marvin claims, they nevertheless were intertwined with and an ingredient of Marvin's overall fraudulent scheme. Marvin never intended to return a dime of the investors' investment or even attempt to fulfill his promises to them. Indeed, he *could not* perform his promises because he did not own any materials to which he could legitimately claim a copyright. The monies he spent as part of his fraudulent scheme do not become "legitimate business expenses" simply because other legitimate businesses also incur these expenses. Unlike the government in *Schneider,* here the five investors' losses were not limited to the amounts necessary to rescind the contract and find a better investment; their losses equaled their entire investment. Therefore, we cannot conclude that the district court's factual findings on this matter were clearly erroneous, nor that the district court abused its discretion in refusing to subtract the amounts listed above from the total loss caused by Marvin's fraud.

■ Marvin next contends that the district court erred in refusing to allow him a two-point offense level reduction for acceptance of responsibility. U.S.S.G. § 3E1.1.[2] The district court, in refusing to allow Marvin an acceptance of responsibility offense level reduction, stated:

> Since the defendant entered his plea of guilty before this Court on October 15, 1993, he has been involved in renting a residence under a false name, kiting several checks wherein his wife's checking account has been substantially overdrawn, forging at least one check to North Trac Side, and writing checks where no funds were available in the said account, for which conduct the financial institution closed the account. All of this conduct demonstrates that his defendant has in no way accepted responsibility for his past criminal activity and is bound and determined to pursue it in the future.

*United States v. Morrison,* 983 F.2d 730, 735 (6th Cir.1993). Prior to oral argument, this Circuit rejected the Sixth Circuit's approach. *See United States v. McDonald,* 22 F.3d 139, 143 (7th Cir. 1994).

■ In sum, we agree. Whether a defendant has accepted responsibility is a question of fact we review for clear error. *United States v. Larsen,* 909 F.2d 1047, 1049 (7th Cir.1990).[3] Marvin argues that the district court erroneously concluded that his pre-sentence activity could be properly characterized as "illegal". Although there might be some dispute as to whether Marvin could have been actually convicted for his pre-sentence checking activity, we need not reach that issue to affirm the district court's sentence.

■ Application Note 1 to the Commentary to § 3E1.1 lists several factors a district court may consider in evaluating whether a defendant has clearly exhibited an "acceptance of responsibility." It is true that among those factors is whether or not the defendant has voluntarily terminated his "criminal conduct or associations." However, as Application Note 1 makes clear, a sentencing judge is not limited to those particular considerations. A sentencing judge may properly consider any "conduct of the defendant that is inconsistent with such acceptance of responsibility" which would outweigh the defendant's early guilty plea as a proxy for acceptance of responsibility. U.S.S.G. § 3E1.1, comment. (n. 3). Therefore, although possibly relevant, it is not necessary that the sentencing judge consider only illegal or criminal activity. The sentencing judge may consider other conduct which is inconsistent with the defendant's acceptance of responsibility.

Nevertheless, Marvin argues that *McDonald* notwithstanding, a sentencing judge may not consider unrelated *non-criminal* conduct in determining whether or not he has accepted responsibility. It is true that *McDonald* holds only that a judge may consider unrelated *criminal* conduct and does not address unrelated *non-criminal* conduct. However, we need not answer whether unrelated non-criminal conduct may be considered because we agree with the district court that Marvin's pre-sentence conduct, legal or illegal, was of almost identical character to

that for which he was convicted. Forging checks, repeatedly writing rubber checks for which Marvin knew there were insufficient funds, and renting under a false name all suggest Marvin's continued proclivity to lie and defraud. Therefore, we AFFIRM the district court's sentencing order.

---

3. "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n. 5).