**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jeffrey B. MARVIN, Defendant–
Appellant.**

No. 96–2721.

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1997.

Decided Feb. 3, 1998.

ing his term of confinement, he commenced serving the supervised release portion of that sentence. Over the next six months, Marvin repeatedly violated the conditions and terms of his supervised release, and a warrant was issued to bring him before the court, which was done on July 2, 1996. The following day, July 3, the district court conducted a revocation sentencing hearing, at which Marvin stipulated to eight separate release violations. The judge subsequently terminated Marvin's release privileges, and sentenced him to two years' imprisonment, the statutory maximum under 18 U.S.C. § 3583 for a supervised release violation by an individual whose original offense of conviction was a class C or D felony.[1] The court thus deviated upward from the applicable five to eleven month sentencing range set forth in § 7B1.4 of the United States Sentencing Guidelines ("U.S.S.G."). Marvin appeals his sentence.[2] We affirm.

John W. Vaudreuil (argued), Larry Wszalek, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Joseph L. Sommers (argued), Madison, WI, for Defendant–Appellant.

Before CUMMINGS, COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

Defendant-appellant, Jeffrey B. Marvin, upon pleading guilty to one count of wire fraud, was convicted in 1993 and sentenced to twenty-seven months' imprisonment, followed by three years' supervised release subject to the usual standard, as well as special, conditions. In November of 1995, after complet-

## I. BACKGROUND

In 1993, defendant-appellant, Jeffrey B. Marvin ("Marvin"), pled guilty to, and was convicted of, one count of wire fraud, 18 U.S.C. § 1343, for having swindled five individuals out of their investments, totalling $72,043, in a fictitious self-help manual marketing scheme.[3] He was ordered to serve a twenty-seven month period of confinement, followed by three years' supervised release subject to certain special and standard conditions, as well as to make full restitution of the $72,043 no later than six months prior to the expiration of his supervised release. The

---

**1.** The two-year sentence was in addition to the twenty-seven months Marvin had served for committing wire fraud.

**2.** Upon the Government's motion for a reduction of Marvin's sentence under Fed.R.Crim.P. 35(b), the district judge, in an order dated November 27, 1996, reduced "the sentence of 24 months imposed ... to 20 months," but affirmed "in all other respects the Order of th[e] Court revoking and terminating supervised release and sentencing the defendant to imprisonment for a term of 24 months."

**3.** The details of Marvin's wire fraud offense, partly relevant for purposes of considering his present appeal, are therefore deserving of recitation herein. As set forth in our prior opinion, *United States v. Marvin*, 28 F.3d 663 (7th Cir.1994),

affirming Marvin's sentence following his conviction for wire fraud:

Jeffrey Marvin was a con artist.... His *modus operandi* was generally the same with respect to all five investors. He placed ads in newspapers promising sparkling investment returns to which each of the unwary investors responded. He would then describe his business plan to sell self-help manuals through telemarketing and radio ads, falsely representing to some that he had a copyrighted manual ready for sale, and providing other investors with fictitious radio test results to further pique their interest. For their respective investments, Marvin promised *each* of them a 50% share in his company.... Marvin's entire operation was a scam, and the five investors lost all of their investment, totalling $72,043. *Id.* at 664 (footnote omitted).

special written terms of Marvin's release, approved by the court on December 9, 1993, provided that *"the defendant [Marvin] is to ... not obtain any loans, open new checking and/or savings accounts, obtain or use credit cards, nor enter into any financial agreements without advance permission of the supervising U.S. Probation Officer."* The standard conditions of Marvin's supervision further stipulated, *inter alia*, that "[w]hile the defendant is on ... supervised released pursuant to this judgment:

*   *   *   *   *   *

2) [he] *shall not leave the judicial district without the permission of the court or probation officer*; [and]

*   *   *   *   *   *

12) [he] *shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer."*

Marvin was made aware of the fact that once he was discharged from prison, any violation of these conditions could result in the revocation of his supervised release and additional imprisonment.

On November 20, 1995, Marvin completed his initial twenty-seven month term of incarceration and commenced serving his period of supervised release. Almost immediately after Marvin was released from prison, he began to flout the law when, on November 22, 1995, he left the Western District of Wisconsin without permission from either the court or his probation officer. He engaged in the same type of violative conduct on three more occasions during the following six month period.[4] Also during the month of November 1995, Marvin, with the assistance of his mother, applied for, received and used a Bank One Visa credit card, without receiving permission from the federal court authorities, in contravention of special condition number five of his supervised release. One of the two Violation Reports submitted to the court in support of the Government's "Peti-

tion for Revocation" detailed Marvin's seemingly fraudulent conduct with respect to his procurement and use of the credit card:

On November 24, 1995, Mr. Marvin advised Officer Baskfield [Marvin's parole officer] his mother had opened a credit card account in his name for use. He was told he would not be allowed to use this account, given his previous history of credit card fraud.

*   *   *   *   *   *

On January 2, 1996, Officer Baskfield received a credit card report which revealed Mr. Marvin opened a Bank One credit card account in June 1995.... As of February 21, 1996, Mr. Marvin had a balance of $504.71....

*   *   *   *   *   *

On May 6, 1996, Officer Baskfield received a call from Amy Kroprude, Fraud Investigator for Bank One in Columbus, Ohio, advising there may be fraudulent activity on Mr. Marvin's Visa card.... Ms. Kroprude advised [Baskfield that] his [Marvin's] debt is currently $7,000, and he appears to be giving false addresses.

Ms. Kroprude further indicated in the past, Mr. Marvin tried to claim fraud on his account from an electronic store in which he attempted to make purchases of electronic equipment; however, the owner of the store knew Mr. Marvin and identified him as the individual who actually made the purchases.[5]

But Marvin's disrespect for the court's orders did not end there; he continued to violate the terms of his supervised release during the ensuing months. On or about March 29, 1996, he executed a sales agreement to purchase a 1994 Chevrolet Corvette without the prior approval of his probation officer, despite the fact that special condition number four in his probation release form set forth an explicit prohibition against "en-

---

4. The record reveals that Marvin left the Western District of Wisconsin without the permission of either the district court or his probation officer in December of 1995, and on April 12 and 13, 1996, respectively.

5. It is unclear whether the $7,000 balance and claim of fraud corresponded to the credit card Marvin obtained with his mother's assistance in

November 1995 or that one which he received in June of 1995. The distinction is nevertheless irrelevant, for Marvin was ordered not to *"obtain or use* credit cards ... without advance permission," and in violation thereof, he obtained and/or used both credit cards while living under supervised release in the absence of such permission.

ter[ing] into any financial agreements without advance permission of the supervising U.S. Probation Officer." The Violation Reports also recounted the suspicious circumstances surrounding the Corvette purchase agreement. According to Rory Burton ("Burton"), owner of Blue Diamond Automobile Sales, Marvin arrived at his dealership, "flashed a wad of cash," and requested to test-drive the Corvette. Burton allowed Marvin to do so, but required him to leave his Jeep Cherokee as security for the Corvette's prompt, safe return. The defendant drove the Corvette for two days before Burton was able to locate him and convince him to bring it back. Marvin thereafter executed the sales agreement on the vehicle, but never returned to the dealership. Marvin would later testify in a family court proceeding that he had been acquainted with Burton before the incident and that Burton had loaned him the Corvette for purposes of exercising his visitation rights, since his automobile was in need of repair at the time. Burton, however, told a police officer, one Deputy Shadick, that he did not know Marvin prior to letting him test drive the vehicle, and that "Marvin ... inform[ed] Mr. Burton if anyone called regarding his Jeep, he should tell them it was in for repairs."

Marvin's final two supervised release violations, also recited within the Violation Reports as well as during his July 2, 1996, initial appearance,[6] arose when he failed to notify his probation officer within seventy-two hours of "being arrested or questioned by a law enforcement officer" on December 20, 1995, and June 23, 1996, respectively. Specifically, the former incident transpired when Marvin entered a restaurant armed with a baseball bat and approached a man with whom he had just engaged in a disagreement. The police arrived as Marvin was poised to strike his intended victim. Marvin was charged with disorderly conduct, and when he failed to appear in court there-

for as summoned on May 14, 1996, a warrant was issued for his arrest.[7] As to the July 23rd episode:

> A woman ... who is apparently a girlfriend of the defendant's, told police that when she tried to leave the defendant's apartment, that the defendant would not let her use the telephone to call for a ride. The defendant shut [the woman's] leg in a door, and then threw her against a wall. And then worst, the worst thing he, Mr. Marvin, wrapped a telephone cord around [the woman's] neck, pushed her to the floor, and began choking her.

(Initial App. Trans., R. 61, at 5). This final incident brought the final count of Marvin's violations to eight, and the total number of conditions breached to four. As noted above, the sentencing judge was appraised of the above contemptuous acts in two Violation Reports, one dated June 6, and the other June 26, 1996, which Marvin's probation officer submitted to the court. Due to Marvin's numerous probation violations, a warrant was issued for his arrest. He was taken into custody and brought before the court on July 2, 1996, for a bail-detention hearing.

When Marvin appeared before the court on July 3, 1996, for his revocation-sentencing hearing, the judge began by advising him "that in the event of revocation it may be that a sentence of two years could be imposed." The court then asked Marvin whether he was ready to proceed; his attorney responded, "Yes, Your Honor, he is." The defendant went on to orally stipulate to each of the eight aforementioned violations of his supervised release.[8] The stipulations were expressed in general terms, rather than in the same minute detail as set forth in the above-quoted Violation Reports. As such, a reading of the facts adduced and stipulated to at sentencing would not have led one to conclude that Marvin had again engaged in unlawful activity similar to his wire fraud offense of conviction. For example, the stip-

---

**6.** Marvin made an initial appearance (also referred to herein as a "bail-detention" hearing) before a magistrate after being arrested for excessive release violations. His revocation-sentencing hearing took place the following day, July 3, 1996, before a district judge.

**7.** Although it is not entirely clear from the record before us, the transcript from Marvin's initial

appearance suggests that the outstanding warrant was quashed for a prior "nonappearance" sometime before his supervised release revocation hearing.

**8.** The record is devoid of any evidence suggesting that the parties' stipulations were reduced to writing.

ulations concerning Marvin's conduct with respect to the Visa credit card, Corvette automobile, and police encounters, merely recounted that Marvin violated the terms of supervised release when he "opened on his behalf and used [a] Bank One Visa credit card[;] ... complet[ed] a purchase to buy form ... to purchase a 1994 Chevrolet Corvette without permission of the U.S. probation officer[;] ... [and] fail[ed] to notify U.S. Probation Officer John Baskfield of the December 20, 1996, Disorderly Conduct charge and the June 23, 1996, police contact with the Appleton Police Department." *United States v. Marvin,* 93–CR–76–S–01, Memorandum and Order, at 2–3 (W.D.Wis., July 3, 1996). Based upon the parties' stipulations in open court, the district judge found that the defendant had violated the special and standard conditions of his release by: (1) leaving the Western District of Wisconsin on four different occasions without first obtaining permission from the court or his probation officer; (2) applying for, receiving and using a credit card; (3) executing a written purchase agreement on a 1994 Chevrolet Corvette; and (4) twice engaging in police encounters without notifying his parole officer of them within seventy-two hours of their occurrence. He thus revoked Marvin's release and proceeded on to sentencing.

The judge commenced his sentencing analysis, determining that "the defendant was involved in Grade C violations as indicated in Chapter 7B1.1(a)(3)," and that Marvin had a "Criminal History Category" of III. *Id.* at 5. As the court duly noted, this particular combination of violation grade and Criminal History Category, when applied against the § 7B1.4(a) sentencing table, yields a five to eleven month term of imprisonment. *See infra* note 11. The learned judge was not, however, satisfied that a sentence within the applicable § 7B1.4(a) range was appropriate in this case. He decided to "depart upward

to the statutory maximum imprisonment" of two years, taking into consideration "the defendant's (1) total disregard for the rules of supervision, (2) the similarity of his criminal violations to the original offense of conviction, and (3) the excessive number of violations." *Marvin,* 93–CR–76S–01, at 4. At Marvin's revocation-sentencing hearing, the court, in the language quoted hereinafter, left little doubt as to why it ultimately chose to deviate from the five to eleven month period of confinement set forth in § 7B1.4(a), explaining that "the purpose of [the departure] is not for punishment, it's for *deterrence.* The principal reason is to *deter* Mr. Marvin.... [T]he Court believes it should take this opportunity to attempt to *deter* [Marvin] from this future activity with the most significant tool it has available." Marvin failed to make a single objection, on any basis, during the entire course of the hearing.

## II. ISSUES

Marvin advances two arguments for our consideration. Initially, he contends that the district court's imposition of a two-year sentence, an upward deviation from § 7B1.4(a)'s stated term of imprisonment and the maximum allowed under 18 U.S.C. § 3583, constituted a "plainly unreasonable" exercise of judicial discretion insofar as it was allegedly based upon a mischaracterization of the record and unsupported factual assumptions, as well as not exacted pursuant to what he terms an "incremental approach." It is noteworthy that Marvin, during his revocation hearing, stated to the court that he was "prepared to ... return to prison in accordance with the guidelines," thereby agreeing to and not even challenging eleven months of incarceration. Thus, he does not contest his sentence *in toto*—only the thirteen months [9] beyond the guideline range are at issue herein.[10] Second, Marvin asserts that it was

**9.** Marvin is effectively challenging only nine months of his sentence, since, as previously mentioned, his period of confinement was eventually reduced from 24 to 20 months pursuant to FED. R.CRIM.P. 35(b). *See supra* note 2.

**10.** As the following colloquy during Marvin's sentencing hearing reveals, the defendant-appellant likewise does not contest the court's actual revocation of his supervised release:

THE COURT: Is there any objection on the part of the defendant, Ms. Holtzman, to have his supervision revoked at this time?
MS. HOLTZMAN: No, sir.
THE COURT: Is that your understanding [Mr. Marvin]?
DEFENDANT MARVIN: Yes, it is, Your Honor.
THE COURT: The Court then does revoke the defendant's supervised release....

"plain error" for the district court to have failed to provide him with reasonable notice as to the possibility of an upward deviation from § 7B1.4(a)'s recommended sentence.

## III. DISCUSSION

### A. *Waiver*

■ Initially, we address Marvin's contention that the district court's imposition of a two-year sentence—the maximum allowed under 18 U.S.C. § 3583—was tantamount to a "plainly unreasonable" exercise of judicial discretion to the extent that it was allegedly based upon a mischaracterization of the record and unsupported factual assumptions, as well as not exacted pursuant to an "incremental approach." Before doing so, however, we must consider a crucial preliminary matter which, quite surprisingly, both parties have failed to address on appeal—that is, whether Marvin has waived any and all arguments relating to the "reasonableness" of his twenty-four month sentence.

It is axiomatic that a party's "failure to raise an issue before the district court results in a waiver of that issue on appeal." *United States v. Livingston*, 936 F.2d 333, 335 (7th Cir.1991) (quoting *United States v. Holguin*, 868 F.2d 201, 205 (7th Cir.), *cert. denied*, 490 U.S. 1051, 109 S.Ct. 1966, 104 L.Ed.2d 434 (1989)); *see also United States v. Heilprin*, 910 F.2d 471, 474 (7th Cir.1990) ("It is by now the clear rule in this circuit that a defendant who has been afforded such opportunities to raise a sentencing challenge to the district court must avail herself of those opportunities, or risk waiver of the claim on appeal."). In the instant case, Marvin's revocation-sentencing hearing spanned almost one-half hour's time, and *at no point during those thirty minutes did Marvin's counsel make a single objection to any of the district court's various factual findings, statements, methodologies and/or conclusions.* In fact, at the end of the hearing, the judge explicitly inquired as to whether either party wished to comment upon his imposition of a twenty-four month term of imprisonment; neither Marvin nor his attorney spoke up:

> THE COURT:.... Is there anything further that either counsel wish to bring to the Court's attention not cumulative of those discussions already provided? Ms. Holtzman.

MS. HOLTZMAN [Marvin's counsel]: No, Your Honor.

Because Marvin failed to make a proper timely objection, much less any objection for that matter, to a single facet of his sentence before the district court, he has waived all arguments related thereto on appeal unless "plain error" is manifest. *United States v. Whaley*, 830 F.2d 1469, 1476 (7th Cir.1987).

■ As just noted, "[i]ssues that have not been properly preserved for appeal must be reviewed under the strict standards of the plain error doctrine ... which allows appellate courts to correct only 'particularly egregious errors' for the purpose of preventing a miscarriage of justice." *Id.* " 'To be plain, an error must be conspicuous, at least in hindsight,' " *United States v. Wynn*, 845 F.2d 1439, 1443 n. 8 (7th Cir.1988) (quoting *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984)), and it is the *exceptional circumstance* where such is the case. *United States v. Jackson*, 542 F.2d 403, 409 (7th Cir.1976). Indeed, " 'reversing a [sentencing determination] on the basis of an error that the defendant's lawyer failed to bring to the judge's attention is inconsistent with the premises of an adversary system and disruptive of the efficient operation of the criminal justice system.' " *Wynn*, 845 F.2d at 1443 n. 8 (quoting *Silverstein*, 732 F.2d at 1349). While we are of the opinion that it was not "plainly erroneous" for the trial court, in the course of imposing the two-year sentence, to have labelled the defendant's supervised release violations as "criminal" and failed to invoke what Marvin terms an "incremental approach" to factfinding, we need not rest our holding on that ground. In other words, assuming, *arguendo*, as we do below solely for purposes of discussion, that Marvin did in fact properly raise timely objections to the court's findings of fact, statements, methodologies and conclusions during his sentencing hearing, we would nevertheless affirm his twenty-four month period of confinement.

### B. *Sentencing Deviation from § 7B1.4(a)*

■ It was not all too long ago that the degree of judicial scrutiny we were to employ when considering § 7B1.4(a) sentencing issues remained an open question in this Cir-

**1136**

cuit. *See, e.g., United States v. McGee*, 60 F.3d 1266 (7th Cir.1995) (case of first impression). However, it is now well-settled that, because "the range set forth in the policy statement at § 7B1.4(a) is neither a guideline nor interpretive of a guideline," *id.* at 1272 (citing 18 U.S.C. § 3742(a)(4)); *see also United States v. Doss*, 79 F.3d 76, 79 (7th Cir. 1996), we review a sentence imposed following revocation to ascertain whether it was "plainly unreasonable." *Doss*, 79 F.3d at 79. "Plainly unreasonable" is an unusual standard of review, and other panels of the court have not been entirely consistent in describing the appellate task. *Compare id.*, McGee, 60 F.3d at 1272, and *United States v. Lee*, 78 F.3d 1236, 1239 (7th Cir.1996), with *United States v. Hale*, 107 F.3d 526, 529 (7th Cir. 1997). Some language in *Hale*, read in isolation, could be misunderstood to say that appellate review even of strictly legal issues is "quite limited," but we are confident that the panel in *Hale* meant this language only to restate the proposition that the "plainly unreasonable" standard entails a deferential appellate posture concerning issues of fact and the exercise of discretion. *Cf. Koon v. United States*, 518 U.S. 81, 98–100, 116 S.Ct. 2035, 2047, 135 L.Ed.2d 392 (1996) (holding that appellate review of legal issues under the Sentencing Guidelines is plenary). For current purposes, it is enough to use deferential appellate review without attempting a gloss that would further complicate an already overly complex topic.

■ "The revocation of supervised release is governed both by statute, 18 U.S.C. § 3583(e)(3), and by policy statements promulgated by the Sentencing Commission, U.S.S.G. Ch. 7." *United States v. Wright*, 92 F.3d 502, 504 (7th Cir.1996). Beginning with a reading of the statute, one finds that after an individual has served the period of confinement for his offense of conviction and thereafter had his supervised release privileges revoked for having "violated a condition of supervised release," the district judge may, "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6):"

> ... require the defendant to *serve in prison all or part of the term of supervised release* ... if the court ... finds by a preponderance of the evidence that the defendant violated a condition of supervised release .... [A] defendant whose term is revoked under this paragraph may not be *required to serve ... more than 2 years in prison if [the offense that resulted in the term of supervised release] is a class C or D felony* ....

18 U.S.C. § 3583(e)(3) (emphasis added). The relevant text of 18 U.S.C. § 3553, in turn, reads as follows:

> The court, in determining the particular sentence to be imposed, *shall* consider—
>> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>> (2) the need for the sentence imposed—
>> \*  \*  \*  \*  \*  \*
>>> (B) to afford adequate deterrence to criminal conduct;
>>> (C) to protect the public from further crimes of the defendant; and
>>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>> \*  \*  \*  \*  \*  \*
>> (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...
>> (5) *any pertinent policy statement issued by the Sentencing Commission* ...; [and]
>> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6) (emphasis added). Thus, *a district court must consider a multitude of factors, including, but not limited to, the applicable § 7B1.4(a) sentencing range, when determining the appropriate sentence in cases such as this one.* No single factor necessarily predominates over any other, and the statutory language, "The court ... shall consider," evidences that none of them, whenever applicable, should be ignored altogether.

As the plain language of 18 U.S.C. § 3553 makes clear, the statute is not the end of the sentencing story; it directs us to consider "any policy statement issued by the Sentencing Commission." Section 7B1.4(a) of the Guidelines, which, as explained below, is actually an advisory "policy statement" (in contradistinction to a binding guideline), sets forth in tabular form the applicable ranges of imprisonment upon revoking an individual's supervised release.[11] In the present case, the district court found, "based upon stipulation of the parties," *Marvin*, 93–CR–76–S–01, at 5, that Marvin had violated the special and standard conditions of his supervised release no fewer than eight times, and revoked the defendant's supervised release, accordingly. The court proceeded on to sentencing and exercised its discretion to "depart upward to the statutory maximum imprisonment" of two years' imprisonment.[12] *Id.* at 4.

### 1. The District Judge Did Not "Mischaracterize" the Record

In the first of Marvin's three arguments addressing the bases and duration of his sentence, he maintains that the court somehow engaged in a "mischaracterization of the record" by having allegedly labelled his Grade C supervised release violations as "criminal conduct," and thus presumptively imposing a longer sentence than he might have otherwise if he had not acted under such a misapprehension. After reviewing the record, we are able to discover only two isolated instances in which the court referred to Marvin's violations as being "criminal"— even then, the term used was "criminal *violations*," not "criminal *conduct*." [13] Notwithstanding this inconsequential discrepancy in terminology, we proceed to consider his argument.

We begin with a recognition that "*[t]he violation of a condition of supervised release is not a crime*, but it is a 'breach of trust,' and a ground for revocation of supervised release." *United States v. Hill*, 48 F.3d 228, 232 (7th Cir.1995) (emphasis added). While the Violation Reports submitted to the trial court suggest that Marvin did in fact engage in criminal conduct (i.e., credit card fraud and assault), the defendant did not stipulate to the same detailed factual

**11.** Specifically, § 7B1.4(a) provides that "[t]he range of imprisonment applicable upon revocation" is to be determined as follows:

**Revocation Table**
**(in months of imprisonment)**
**Criminal History Category** *

| Grade of Violation | I | II | III | IV | V | VI |
|---|---|---|---|---|---|---|
| Grade C | 3–9 | 4–10 | 5–11 | 6–12 | 7–13 | 8–14 |
| Grade B | 4–10 | 6–12 | 8–14 | 12–18 | 18–24 | 21–27 |

* * *

* The criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision.

**12.** The district judge "departed" upward to the two-year statutory maximum pursuant to §§ 4A1.3 and 5K2.0 of the U.S.S.G. And while his well-reasoned order, in our view, arrived at the correct conclusion, the sections of the Guidelines he employed may not have been the most appropriate sentencing provisions upon which to rely in this case. Sections 4A1.3 and 5K2.0 permit judges, in the exercise of their discretion, to impose sentences which are either longer or shorter in duration than the terms of imprisonment set forth in binding guidelines. However, because Chapter 7 of the U.S.S.G. is nothing more than an advisory policy statement, *it is not a binding guideline*. We recognize that there are situations wherein § 4A1.3 and/or § 5K2.0 may be applicable in the sentencing of an individual upon revocation of his release. *See e.g.*, U.S.S.G. § 7B1.4, Commentary Notes 2–4. We do not believe this to be one of those situations. Nevertheless, Marvin does not take issue with the court's invocation of §§ 4A1.3 and 5K2.0 on appeal, nor do we think that it is of particular import. Indeed, the district court referenced the factors that 18 U.S.C. § 3553 require a judge to consider when sentencing an individual after terminating his or her supervised release. Therefore, even if Marvin had taken the initiative to challenge the district court's decision in this regard, we would hold that it was "harmless error" for the sentencing judge to have "departed" upwards pursuant to §§ 4A1.3 and 5K2.0 of the U.S.S.G., rather than 18 U.S.C. §§ 3553 and 3583.

**13.** At Marvin's sentencing hearing, the district judge inadvertently called the defendant's supervised release violations, "criminal convictions," but immediately thereafter referred to them as "criminal violations." The district court's sentencing order also alludes to the defendant's "criminal violations."

statement of violations contained within those documents, but rather to a more generally articulated, non-criminal type of behavior. Of course, the Guidelines themselves "make[ ] clear that the court is not obliged to accept the stipulations of the parties.... Rather, *in determining the factual basis for the sentence, the court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information.*" U.S.S.G. § 6B1.4, Commentary (emphasis added) (addressing stipulations in plea agreements). Therefore, the district judge at the time could very well have been contemplating the "criminal" nature of Marvin's conduct as set forth within the Violation Reports. Unfortunately, the sentencing transcript does not reveal to us whether such was the case. However, even if we were to assume that it was somewhat inaccurate for the court to have referred to Marvin's four supervised release violations as "criminal," the obvious two-part question arises: was the reference to "criminal violations" merely an inconsequential "slip of the tongue," and if not, did the district judge rely upon this alleged misapprehension at the time of sentencing? We are of the opinion that Marvin cannot surmount even the first of these two obstacles (i.e., demonstrating that the references to "criminal violations" were not inadvertent) in his effort to distract us from the overriding issue in this case: whether the trial court properly considered § 7B1.4 and imposed a sentence within the ambit of 18 U.S.C. § 3583(e).

Based on our review of the record, we are convinced that the court's references were clearly inadvertent. Indeed, of the approximately twenty times that the judge uttered the word "violation" (or any derivation of it) during Marvin's sentencing hearing, on only one occasion did he preface it with the adjective "criminal." And even then, he corrected his reference to "criminal violations" later in the same sentence when he simply alluded to them as "violations," having stated that "the departure provided by this Court is based on the defendant's total disregard for the rules of supervision, the similarity of his criminal

convictions to the original—or criminal violation I should say to the original offense of conviction, and the excessive number of *violations.*" The same may be said for the district court's reference to the term "criminal violations" in its order. Just as *"there are no 'magic words' a court must use" when making factual findings at sentencing, United States v. Coonce,* 961 F.2d 1268, 1278 (7th Cir.1992) (emphasis added), there similarly are very few words, standing alone, whose use at such time would warrant automatic reversal of a given sentencing determination. We must look at the entire record and sentencing transcript to ascertain the court's intent, and not just " 'fly speck the record' by combing it for ... errors," *United States Ex Rel. Crist v. Lane,* 745 F.2d 476, 483 (7th Cir.1984), and taking words out of context. In short, "while revocation obviously is not a crime ... [,] Congress has made it a basis for committing the criminal to prison," [14] *Hill,* 48 F.3d at 232 (citing 18 U.S.C. § 3583(e)(3)), and we find Marvin's present assertion unpersuasive in his attempt to convince us that it was "plainly unreasonable" for the district judge to have sentenced him to two years' imprisonment.

### 2. The District Court Used the Proper Methodology in Imposing the Two–Year Sentence.

■ Marvin further argues that the sentencing judge based his findings on what he classifies as unsubstantiated facts contained within the record. He once again dwells on the fact that the court referred to his supervised release violations as "criminal" acts, and contends that the sentencing judge failed to employ the proper methodology for determining whether his disorderly conduct charge—what Marvin suggests is "[t]he only violating conduct that could remotely be described as 'criminal' "—could be used to adjust his "Criminal History Category" under § 4A1.3 of the U.S.S.G. The "methodology" that Marvin refers to emanates from the language of § 4A1.3, pursuant to which "the district court must make an independent determination that a preponderance of the evi-

---

**14.** An individual's violation of the conditions of his supervised release is not a crime, but the violative conduct can constitute criminal behav-

ior if it satisfies the elements of a particular offense.

dence indicates that the defendant committed the [prior] crim[inal] conduct]." *United States v. Short*, 4 F.3d 475, 480 (7th Cir.1993) (citation omitted). Marvin's argument, although clever, is nonetheless unconvincing for two reasons. First, to reiterate, the court only inadvertently referred to the defendant's supervised release violations as "criminal," and the sentence it imposed was not based on the belief that Marvin had engaged in "criminal" activity.

■ And second, as previously explained, the revocation of an individual's supervised release is governed both by 18 U.S.C. § 3583(e)(3) and policy statements set forth in Chapter 7 of the U.S.S.G. Of these two sources, the statute is our starting point, and it directs that we consider, but not necessarily yield to or be bound by, any *"policy statement* issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5) (emphasis added). Thus, after revoking a felon's supervised release, the judge may, in his discretion, impose a sentence spanning anywhere from one day to two years of imprisonment. Obviously, he must consider the applicable sentencing range contained within § 7B1.4(a), but his decision to disregard its recommendation does not implicate § 4A1.3. *See United States v. Mathena*, 23 F.3d 87, 93 n. 13 (5th Cir.1994) ("A sentence which diverges from advisory policy statements is not a departure such that a court has to ... make specific findings normally associated with departures. . . ."). Rather, if

the judge wishes to impose a sentence outside § 7B1.4's designated range, he is free to do so subject only to the constraints of the statute with which he started his sentencing analysis, 18 U.S.C. § 3583. *See Hale*, 107 F.3d at 529. For these reasons, we hold that § 4A1.3 is irrelevant to our disposition of this case, and as such, the district judge's alleged failure to apply that provision is an insufficient ground to warrant reversal.[15]

Of course, the court was under a statutory obligation to find "by a preponderance of the evidence that [Marvin] violated a condition of supervised release," 18 U.S.C. § 3583(e)(3), before revoking such release and thereafter sentencing him to a term of imprisonment. Here, the parties stipulated to the very facts which lead the judge to conclude that Marvin violated various conditions of his supervised release.[16] Because "[s]tipulations of fact ... obviate the need for appellate review of factual findings," *TMF Tool Co., Inc. v. Siebengartner*, 899 F.2d 584, 588 (7th Cir.1990), we need not concern ourselves with Marvin's assertion that the district court somehow made findings of fact using an incorrect methodology.

*3. The District Court Did Not Abuse Its Discretion in Deviating from the Sentencing Range Set Forth in § 7B1.4*

■ Marvin's final argument dealing with the length of his sentence is grounded on the

---

**15.** *See supra* note 12 (explaining that "there are situations wherein § 4A1.3 ... may be applicable in the sentencing of an individual upon revocation of his release. We do not believe this to be one of those situations.") (citations omitted).

**16.** At Marvin's revocation hearing, the district judge related his findings, to wit:

After reviewing the proffer offered by the United States Attorney and the admissions of the defendant, the Court finds that the defendant has violated standard condition No. 2 of the supervised release which states, You shall not leave the judicial district without permission of the Court or probation officer on, my records indicate November 22, December 1995, and April 12 and 13, 1996.

The Court further finds the defendant has violated special condition No. 4 of his supervised release which again states, You are not to obtain or use credit cards without the advance permis-

sion of the United States Probation Officer, by allowing to have opened on his behalf and used a Bank One Visa credit card from November 1995 through May of 1996.

Further, the defendant has violated special condition 4 which states that he was not to enter into any financial agreements without advance permission of the supervising United States Probation Officer. He completed a purchase to buy form on or about March 29, 1996, for the purchase of a 1994 Chevrolet Corvette without the permission of the United States Probation Officer.

And finally, there's a violation of the standard condition No. 12 which states that the defendant shall notify the Probation Office within 72 hours of being arrested or questioned by a law enforcement officer, having failed to notify the United States Probation Officer of the December 20, 1995 disorderly conduct charge and that on June 23, 1996 he had contact with the Appleton Police Department.

premise that the sentencing judge failed to articulate the specific factors justifying his departure from the applicable § 7B1.4(a) range. Towards this end, he primarily argues that since two years' incarceration even exceeds the punishment which § 7B1.4(a) imposes upon a defendant with a "Grade A" [17] supervised release violation and "Criminal History Category" of III, the district court obviously made an "absurd determination" and "must have abused its discretion by ignoring § 7B1.4(a) completely."

We are unmoved by Marvin's distorted reasoning. In his attempt to obscure the issue before us, he effectively compares a new Jaguar with a Yugo. That is, supervised release is nothing more than a period during which a convicted criminal is afforded the opportunity to prove to the court and his probation officer that he can conform his conduct to the rules and norms of organized society. All other things being equal, the more rules broken and/or orders disregarded, or the more serious the rule violated and/or order disregarded, while under supervised release, the longer the period of imprisonment which will follow after revocation. Logically, at some point, the term of imprisonment for a habitual supervised release violator whose violations were less grievous will equal or exceed that of a one-time supervised release violator whose single violation was more serious. Congress recognized as much when it enacted 18 U.S.C. § 3553 and instructed trial judges to impose sentences that *"afford adequate deterrence"* against future wrongful conduct and *"promote respect for the law."* Thus, Marvin cannot reasonably compare his two-year sentence for *multiple* Grade C violations of supervised release with another for a *single* Grade A violation.

▪ We next turn to consider the question of whether the sentencing judge, as Marvin argues, failed to articulate the specific factors justifying a departure from the applicable § 7B1.4(a) range. Initially, we note that "[t]he policy statement set out in section 7B1.4(a) is entitled to great weight.

It is an element in the exercise of a judge's discretion in sentencing. It would be an abuse of his discretion to ignore it. But it doesn't have to be followed." *Doss,* 79 F.3d at 78. Thus, the issue here does not necessarily turn on the detail with which the district court expressed its reasons for imposing a sentence beyond the Guideline range, but rather whether it considered § 7B1.4 in the exercise of its sentencing discretion. *See Hale,* 107 F.3d at 530 ("[W]e have never required a sentencing judge to make findings addressed to each of the relevant factors [set forth in 18 U.S.C. § 3553] at the risk of having the sentence vacated and the case remanded for resentencing. We have instead been satisfied if the sentencing court made comments reflecting that the appropriate factors were considered."). *And it is beyond question that the district judge in fact considered, and certainly did not "ignore," § 7B1.4 in this case.* We point out that the district court's order clearly references that section of the Guidelines, and begins its sentencing discussion by explaining, "pursuant to § 7B1.4(a) of the U.S. Sentencing Commission Policy Statements, a sentence in the range of 5 to 11 months' imprisonment is applicable." *Marvin,* 93–CR76–S–01, at 3. In the court's view, however, the imposition of only a five to eleven month sentence would have been inappropriate due to Marvin's flagrant and complete disregard for the rules of supervision, the similarity of his supervised release violations to the original offense of conviction, and the excessive number of those violations. Moreover, at Marvin's sentencing hearing, the trial judge made clear as to why he chose to deviate upward to the statutory maximum of twenty-four months' imprisonment:

[T]he departure provided by this Court is based on the defendant's total disregard for the rules of supervision ... and the excessive number of violations.... Now I don't know if this is going to be a sufficient deterrent but it's all the Court has and *the purpose of this is not for punishment, it's*

---

17. A "Grade A" supervised release violation is any:

conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense,

or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years.

U.S.S.G. § 7B1.1(a)(1).

*for deterrence. The principal reason is to deter Mr. Marvin.... [T]he Court believes it should take this opportunity to attempt to deter him from this future activity with the most significant tool it has available.*

As noted above, *deterring future criminal conduct is one of the factors a district court must take into account when sentencing an individual upon revoking his supervised release.* Just as we concluded in *United States v. Doss,* the district judge "considered the policy statements and then articulated his concerns about [the defendant] and the need to imprison him for a longer period than set out in the policy statement. On the basis of this record, that conclusion is not even close to being plainly unreasonable." *Doss,* 79 F.3d at 79.

We hold that Marvin waived his present arguments with respect to the trial court's

sentencing determination by failing to raise them in a timely manner before the court, and even if such were not the case, it was not "plainly unreasonable" for the district judge to have deviated from the applicable range set forth in § 7B1.4(a) and imposed a two-year term of imprisonment for the defendant's repeated contemptuous conduct in violating his supervised release.

### C. Notice of Sentencing "Departure"

■ In addition to arguing that it was "plainly unreasonable" for the sentencing judge to have imposed a two-year sentence for his multiple supervised release violations, Marvin asserts that the district court erred in failing to give him proper notice of the potential for an upward "departure" from the applicable five to eleven month sentencing range set forth within § 7B1.4(a) of the U.S.S.G.[18] Marvin finds a glimmer of support

---

18. It is indeterminable from our review in this case whether the presentence report ("PSR") or the Government's recommendation affirmatively identified the basis for a potential sentencing deviation. A U.S. Probation Officer did draft a "notice of possible departure," addressed to the presiding district judge and Marvin's attorney, that was dated July 2, 1996, *just one day prior to sentencing.* However, the record does not evidence when, much less whether, the *defense* received this correspondence. *See United States v. Jackson,* 32 F.3d 1101, 1108 (7th Cir.1994) ("*Advance notice means that prior to the sentencing hearing the defense must be informed....*"). The fact that Marvin, during sentencing, personally pleaded with the judge to "stay within the guidelines" certainly suggests that he was well aware of the prospect of an upward "departure" from § 7B1.4 before he set foot in court on July 3rd. And, furthermore, the record is clear that the judge apprised Marvin of the possibility for an upward "departure" at the commencement of his revocation hearing:

> THE COURT: The Court will establish that Mr. Marvin is present with his attorney, that he is charged with a number of violations which suggests that revocation may be entered in said manner. Those violations being specifically set forth in the Petition which is on file herein and which were brought to the defendant's earlier attention. The Court at this time would advise that in the event of revocation it may be that a sentence of two years could be imposed. I would ask, Ms. Holtzman [Marvin's attorney], is the defendant ready to proceed at this time?
>
> MS. HOLTZMAN: Yes, Your Honor, he is.

Assuming, *for the time being,* that notice was required, by the time Marvin's hearing arrived such notice might have been too late, for where

neither a PSR nor the Government has "inform[ed] the defendant ... of the specific grounds ... rel[ied] on to increase the terms of confinement," the "judge must [do so] ... a sufficient time in advance of sentencing (i.e., *not during the actual sentencing*)." *Id.* (emphasis added). We are mindful that the sentencing hearing itself did not actually commence until Marvin's counsel indicated that the defendant was ready to proceed, and before that point in time the judge had taken care to warn Marvin "that a sentence of two years could be imposed." Whether this notice was provided a "sufficient time in advance of sentencing" is another question, but one we need not answer today. As previously explained, Marvin's attorney failed to either request an adjournment to prepare a defense for the "departure" or object to a lack of reasonable notice at the time the court posed the above-quoted question, as well as at any time thereafter—until now. One might very well conclude that he has therefore waived the issue on appeal. Indeed, this Circuit has long recognized that "to preserve an issue for appellate review, a party must make a proper [timely] objection at trial that alerts the court and opposing party to the specific grounds for objection." *Wynn,* 845 F.2d at 1442 (citing *United States v. Laughlin,* 772 F.2d 1382, 1391–92 (7th Cir.1985)). "Issues that have not been properly preserved for appeal must be reviewed under the strict standards of the plain error doctrine...." *Whaley,* 830 F.2d at 1476. While this Court has previously concluded that a defendant's failure to object to a lack of notice of a possible sentencing "departure" constitutes "plain error," *see United States v. Otis,* 107 F.3d 487 (7th Cir.1997) (finding plain error where sentencing judge made *sua sponte* departure to maximum sentence pursuant to a binding guideline without giving defendant no-

for his position in the case law of this Circuit and the Supreme Court, the latter having explained that "before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 [of the Federal Rules of Criminal Procedure] requires that the district court give the parties reasonable notice that it is contemplating such a ruling." *Burns v. United States*, 501 U.S. 129, 137–39, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991); *see also United States v. Sasson*, 62 F.3d 874, 891 (7th Cir.1995). As *Burns* makes clear, the applicability of Rule 32 and, alternatively, the question as to whether notice must be given, is contingent upon the imposition of a sentencing "departure" within the meaning ascribed that term by the U.S.S.G.

Nearly ten years after the United States Sentencing Commission introduced the U.S.S.G. to our nation's judicial system, the term "departure," or "depart upward," has found its way into the standard vernacular of federal sentencing procedure and practice. *See Doss*, 79 F.3d at 78. Unfortunately, the phrase can be, and sometimes is, misused among practitioners and courts alike. Perhaps the most logical source to reference in the course of clearing up this confusion is the Guidelines themselves, which explain, in pertinent part:

> The Commission intends the sentencing courts to treat each *guideline* as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which *a guideline* linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G. Introductory Note 4(b) (emphasis added). Thus, a proper reading of the

Guidelines makes clear that a "departure" is a deviation from any of the U.S.S.G.'s various *binding guidelines* due to "aggravating or mitigating circumstance[s] of a kind ... not adequately taken into account by the Sentencing Commission ... that should result in a sentence different from that described." *Id.* (quoting 18 U.S.C. § 3553(b)). However, a "guideline," and any "departure" therefrom, must be distinguished from a "policy statement," and any "deviation" from it. The former requires notice, whereas the latter does not.

■ While at one time, albeit briefly, this Court adhered to the belief that all U.S.S.G. policy statements were binding on the sentencing judge unless inconsistent with a guideline or federal statute, *see United States v. Lewis, 998 F.2d 497* (7th Cir.1993), since 1993 we have recognized that "[t]he policy Statements in Chapter 7 ... are neither guidelines nor interpretations of guidelines[,] ... [and] they do not bind the sentencing judge." *Hill*, 48 F.3d at 231; *see also Doss*, 79 F.3d 76; *McGee*, 60 F.3d 1266. *As such, it is not mandated that a judge follow the policy statement contained within § 7B1.4(a) at a probation revocation hearing—it is advisory only, as opposed to a binding guideline—although it would constitute an abuse of discretion to ignore it altogether. Doss*, 79 F.3d at 78. And it is worth reiterating that only sentencing diversions from *binding guidelines* may be characterized as "departures." This reasoning leads us to the logical conclusion that any upward deviations from the *advisory* sentencing ranges in § 7B1.4(a) are not "departures," and therefore, a district court is not required to give defendants prior notice of such deviations. *See Mathena*, 23 F.3d at 93 n. 13 ("A sentence which diverges from advisory policy statements is not a departure...."); *United*

---

tice thereof), one of our two reasons for so holding (i.e., because "the court's error-failing to give notice contrary to the unambiguous rule of *Burns*—was clear," *id.* at 489), is not present in this case. A plain error is one which is clear or obvious and affects substantial rights, *id.* (citing *United States v. Olano*, 507 U.S. 725, 732–36, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993)), and, based on the facts and circumstances surrounding this case, we are convinced that there is not such a "clear or obvious" error in sentenc-

ing procedure where, as here, the trial judge informs the defendant that a "departure" could be forthcoming, then asks the defendant whether he is ready to proceed, and defense counsel neither requests an adjournment nor objects to a lack of reasonable notice. In the end, it is inconsequential whether we declare that Marvin has waived his notice argument; the final result will be the same—Marvin loses, as it is not necessary to provide a defendant with notice of a potential "departure" from § 7B1.4 prior to sentencing.

*States v. Davis,* 53 F.3d 638, 642 n. 15 (4th Cir.1995) ("It is well established that '[a] sentence which diverges from advisory statements is not a departure.' ") (quoting *Mathena, supra*). Likewise, the trial judge did not commit error in allegedly having failed to do so in the present case.

Our decision today finds ample support in the case law of this Circuit. As a matter of fact, we have previously held, by implication, that a deviation from § 7B1.4 is not a U.S.S.G. "departure." In *Doss,* for example, the defendant had engaged in numerous violations of his supervised release, for which the district judge, after "noting that he would make an 'upward departure,' " sentenced him to two years' imprisonment, which, like in the case at bar, was the maximum term allowed under 18 U.S.C. § 3583(e)(3). *Doss,* 79 F.3d at 78. On appeal, the defendant maintained that insofar as the sentencing judge "talked in the language of the guidelines [ (i.e., used terms like 'depart upward') ], he bound himself to work within the framework of the guidelines." *Id.* We explicitly rejected that argument and went on to explain that "[t]he fact that [the district judge] talked in the now familiar lingo of the guidelines does not matter...." *Id.* Our conclusion is, in fact, also consistent with each and every circuit that has heretofore conclusively addressed this very issue.[19] *See Mathena,* 23 F.3d at 93 n. 13 ("Because we hold that the policy statements of Chapter 7 are advisory only, we reject [the defendant's] contention that the district court had to give notice of its 'departure.' A sentence which diverges from advisory policy statements is not a departure such that a court has to provide notice or make specific findings normally associated

with departures under § 3553(b)."); *United States v. Hofierka,* 83 F.3d 357, 362 (11th Cir.1996) ("[W]e hold that the sentencing court is not required to give notice of its intent to exceed the Chapter 7 sentencing range.").

## IV. CONCLUSION

When Mr. Marvin appealed his sentence for committing wire fraud to this Court some three years ago, we rightfully labeled him a "con artist." *Marvin,* 28 F.3d at 664. Despite the rehabilitative efforts of our criminal justice system and an opportunity to start anew as a lawabiding citizen under supervised release, he has found himself in the unfortunate position of being before this Court once again for the same type of conduct that originally brought him here. As the district court explained, "the defendant's violations are indicative of a pattern of financial deception and irresponsibility for which the defendant shows no remorse or willingness to refrain from such deceptive practices." *Marvin,* 93CR–76–S–01, at 3. In other words, Marvin is still a "con artist." Within just two short days after being freed from confinement, the defendant took it upon himself to embark on a six-month course of deception and fraud, during which he misled both his probation officer and the district court into believing that he was living pursuant to the terms and conditions of his supervised release. He, of course, was not, and his deceit was ultimately exposed.

We conclude that it was not "plainly erroneous," much less "plainly unreasonable," for the court to have sentenced Marvin to two years' imprisonment. Marvin has waived the

---

**19.** Marvin cites *United States v. Boyd,* 961 F.2d 434 (3rd Cir.1992), for the proposition that the Third Circuit requires district courts within its jurisdiction to notify individuals of potential sentencing deviations upon revocation of their supervised release. We question the accuracy of Marvin's statement, however, *as the Third Circuit explicitly declared that it would not address the question of notice in Boyd*:

[The defendant's] final ground for appeal is that the district court should have given him notice of an upward departure [from § 7B1.4(a) ]. *Since we have found that the district court imposed an impermissible sentence by deviating beyond section 3565(a)(2), we need not reach the issue of notice.* We note, however, that

the Supreme Court's decision in *Burns v. United States,* 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), would apply in this case had a departure been permissible.

*Id.* at 440 (emphasis added). And while the court acknowledged that *Burns* would have applied had a departure been warranted, it does not necessarily follow that the holding in *Burns* impliedly imposed a notice requirement in *Boyd.* Indeed, we cite *Burns* as being applicable in the context of our discussion today, but we have concluded that the case, when *applied* to § 7B1.4 of the U.S.S.G., does not mandate that the district judge give an individual notice of a potential sentencing "departure" after the revocation of his supervised release.

arguments he presents for our consideration on appeal by having failed to raise a single timely objection during his revocation sentencing hearing. And even assuming, *arguendo,* that such was not the case, the court found, based on the parties' stipulations, that Marvin engaged in conduct that constituted multiple violations of supervised release. It properly considered § 7B1.4(a)'s five to eleven month recommended term of imprisonment, and thereafter articulated its reasons for "departing" upward to 18 U.S.C. § 3583's two-year maximum. We further hold that notice of a potential sentencing deviation from the ranges set forth in § 7B1.4 of the U.S.S.G. need not be given to a defendant because Chapter 7 is an advisory policy statement, as opposed to a binding guideline. Thus, while it is clear from the record that the sentencing judge, before asking Marvin whether he was ready to proceed, advised him "that in the event of revocation it may be that a sentence of two years could be imposed," it was not necessary for him to have done so.

AFFIRMED.