**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Wiley HILL, Jr., Defendant–Appellant.**

**No. 94–1723.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 16, 1994.

Decided Jan. 30, 1995.

---

**230**

Robert L. Michels (argued), Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Michael F. Lefkow (argued), Brendan P. Meyer, Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.

POSNER, Chief Judge.

The principal question presented by this appeal is the binding effect of policy statements found in the Guidelines Manual issued by the U.S. Sentencing Commission. Wiley Hill pleaded guilty to stealing the contents of a letter while employed by the Postal Service (the contents being two gold-plated chains worth together about $20) and was sentenced to 12 months in prison to be followed by two years of supervised release. He was released from prison in May 1993. He did not stay out of trouble for long. In August, his probation officer notified the sentencing court that Hill had already violated several conditions of his supervised release, including that he not use cocaine. The government moved to revoke the supervised release. A hearing on the motion was scheduled, but Hill failed to appear. In September, Hill was arrested for disregarding a stop sign, driving with a suspended license, driving an uninsured vehicle, and obstructing justice by giving the arresting officer a false name. On Christmas Eve he was again arrested, this time for stealing more than $150 worth of children's clothing (the report of the arrest indicates that the value was $279.46) from a department store. This escapade resulted in his being prosecuted in an Illinois state court for retail theft, attempted obstruction of justice (he gave a false name when arrested), and forgery. He pleaded guilty to all three of these charges and was sentenced to three years in prison.

In March of 1994 Hill was "writted" into federal court for a hearing on his violations of supervised release. The violations were conceded; the only issue was punishment. The guidelines range applicable to these violations, when Hill's criminal record was taken into account, was 21 to 27 months. U.S.S.G. §§ 7B1.1(a)(2), 7B1.4(a). The district judge was minded to make the sentence run concurrently with Hill's state sentence, and the government did not object. Then the government discovered *United States v. Lewis,* 998 F.2d 497 (7th Cir.1993), where a panel of this court had held that all policy statements in the Guidelines Manual are binding on the sentencing judge unless inconsistent with a guideline or with a federal statute. One of these policy statements provides that the judge shall order any term of imprisonment imposed upon the revocation of supervised release to run consecutively to any prison sentence the defendant is serving. U.S.S.G. § 7B1.3(f). Bound as he was by *Lewis,* the judge sentenced Hill to 21 months and ordered that the sentence be served consecutively to Hill's state sentence. Hill asks us to overrule *Lewis.*

We naturally are reluctant to overrule a recent decision. No one likes to acknowledge a mistake (the author of this opinion joined the opinion in *Lewis* ), but adherence to precedent is based on deeper reasons than *amour propre*—is in fact a cornerstone of Anglo–American adjudication. And the more recent a precedent, the more authoritative it is, because there is less likelihood of significantly changed circumstances that would provide a compelling reason for reassessing

the soundness of the precedent. But the circumstances here are unusual.

■ ˙ The panel in *Lewis* believed its result compelled by *Stinson v. United States*, ⸻ U.S. ⸻, ⸻, 113 S.Ct. 1913, 1917, 123 L.Ed.2d 598 (1993), where the Supreme Court had said that "the principle that the Guidelines Manual is binding on federal courts applies as well to policy statements." *Lewis*, like the present case, involved a "Chapter 7" policy statement, that is, a policy statement concerning the mode of punishment for violating supervised release. (Supervised release has replaced parole in federal sentencing, and Chapter 7 of the Guidelines Manual is the chapter that deals with supervised release.) The policy statement at issue in *Lewis* required the substitution of the minimum term of imprisonment required by statute for the maximum of the applicable guidelines range for the violation of supervised release, provided the former exceeded the latter. U.S.S.G. § 7B1.4(b)(2).

*Stinson*, on which we relied in *Lewis*, had not involved a policy statement. It had involved an application note defining "crime of violence," a category of offenses for which the guideline specified a punishment range. See U.S.S.G. § 4B1.2, Application Note 2. The Supreme Court had previously held that the Sentencing Commission's commentary interpreting and explaining specific guidelines was, unless inconsistent with a guideline itself or with a federal statute, authoritative even if it appeared in a policy statement rather than in an application note. *Williams v. United States*, 503 U.S. 193, 199–201, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992). The policy statement in *Williams* forbade a sentencing judge, in deciding whether to depart upward because the defendant's record of convictions did not adequately reflect the gravity of the defendant's prior crimes—an explicit basis under the guidelines for an upward departure—to base the departure on a prior arrest record alone. U.S.S.G. § 4A1.3. *Stinson* merely repeats that the fact that commentary is labeled "policy statement" does not rob it of its authoritative character if, like the policy statement in *Williams*, it interprets a guideline. Not every policy statement does. The one at issue

in the present case, like the one involved in *Lewis*, does not. It does not tell the sentencing judge how to determine the applicable guideline range. It tells him what to do *after* he has determined it—ignore it if the minimum term of imprisonment prescribed by statute exceeds the top of the range (*Lewis*); make it consecutive (this case). These prescriptions are not interpretive or explanatory of anything.

The Sentencing Reform Act delegated to the Sentencing Commission the task of formulating sentencing guidelines. 28 U.S.C. § 994. When the Commission is exercising this delegated power, the courts cannot interfere or second-guess unless the Commission oversteps constitutional bounds. So the guidelines themselves are authoritative, and since the meaning of a text is its interpretation rather than being a property of the uninterpreted text, the Commission's interpretations of the guidelines are authoritative too. The policy statements in Chapter 7, however, are neither guidelines nor interpretations of guidelines. They tell the district judge how to exercise his discretion in the area left open by the guidelines and the interpretive commentary on the guidelines. Such policy statements are entitled to great weight because the Sentencing Commission is the expert body on federal sentencing, but they do not bind the sentencing judge. Although they are an element in his exercise of discretion and it would be an abuse of discretion for him to ignore them, they do not replace that discretion by a rule.

So at least six circuits have held in the wake of *Stinson*—every circuit to address the issue, in fact, except ours. *United States v. Mathena*, 23 F.3d 87, 93 (5th Cir.1994); *United States v. Sparks*, 19 F.3d 1099, 1101 n. 3 (6th Cir.1994); *United States v. Anderson*, 15 F.3d 278, 283–84 (2d Cir.1994); *United States v. O'Neil*, 11 F.3d 292, 301 n. 11 (1st Cir.1993); *United States v. Levi*, 2 F.3d 842, 845 (8th Cir.1993); *United States v. Hooker*, 993 F.2d 898, 901 (D.C.Cir.1993). All but the last of these cases were decided after *Lewis*, and *Hooker* so shortly before that it did not come to the panel's attention in *Lewis* and was not cited in our opinion. The distinction between interpretive and

noninterpretive policy statements, on which these cases pivot, is not mentioned in *Lewis* and so cannot be deemed to have been considered and rejected.

■ Precedents do not cease to be authoritative merely because counsel in a later case advance a new argument. *In re Penn Central Transportation Co.*, 553 F.2d 12, 15 (3d Cir.1977). But as a practical matter an opinion that contains no discussion of a powerful ground later advanced against it is more vulnerable to being overruled than an opinion which demonstrates that the court considered the ground now urged as a basis for overruling. *Schiffels v. Kemper Financial Services, Inc.*, 978 F.2d 344, 351 (7th Cir. 1992); cf. *United States v. Connor*, 926 F.2d 81, 83 (1st Cir.1991).

■ The distinction drawn by the other circuits appeals to us as a sound one, and we cannot find in *Lewis* or elsewhere reasons for rejecting it. When a number of other circuits reject a position that we have taken, and no other circuit accepts it, the interest in avoiding unnecessary intercircuit conflicts comes into play; and if we are asked to reexamine our position, we can hardly refuse. *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir.1987); *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 876 (D.C.Cir.1992); *International Society for Krishna Consciousness, Inc. v. Lee*, 925 F.2d 576, 580 (2d Cir.1991), *aff'd*, —— U.S. ——, 112 S.Ct. 2709, 120 L.Ed.2d 669 (1992). That is not to say that reexamination will cause us to relinquish the position. We are not merely to count noses. The parties are entitled to our independent judgment. But if upon conscientious reexamination we are persuaded that the other circuits have the better of the argument, we should abandon our position in order to spare the Supreme Court extra work. That is the situation in which we find ourselves.

We are helped to this conclusion by a change of mind by the government. In response to a request from the bench during oral argument, the government's lawyer inquired concerning the position of the Solicitor General of the United States on the conflict. We have now been advised that the Solicitor General believes that *Lewis* was decided erroneously, and accordingly the government has confessed error in this case and recommended that we remand the case for resentencing. All things considered, we believe that *Lewis* should be overruled.

As required by our circuit rule 40(f), because this opinion overrules a decision of this court, we have circulated the opinion to the full court for a vote on whether to hear the matter en banc. No judge in regular active service voted to hear the matter en banc.

This does not complete our consideration of the appeal. It is always possible that while the district judge should not have thought his hands tied by the policy statement, it would have been an abuse of his discretion not to make Hill's sentence for violation of the conditions of his supervised release run consecutively with his state court sentence. Although the government has now recommended that we remand the case for resentencing, it has not offered any reasons for believing that a different sentence would be proper or indicated what position it will take on remand, other than to abandon its view that the policy statement is binding.

■ At the core of the policy statement is a principle unmistakable though implicit, and so obviously sound that it would take extraordinary circumstances to justify a departure from it. It is that every separate violation of law deserves a separate sanction, so that no violation shall go unsanctioned. Cf. *United States v. Elmendorf*, 945 F.2d 989, 998 (7th Cir.1991); U.S.S.G. ch. 3, pt. D, introductory comment; U.S.S.G. § 5G1.3(c). The violation of a condition of supervised release is not a crime as such, but it is a "breach of trust," United States Sentencing Comm'n, *Guidelines Manual* 326–27 (Nov. 1, 1994), and a ground for revocation of supervised release. And while revocation obviously is not a crime either, Congress has made it a basis for committing the criminal to prison. 18 U.S.C. § 3583(e)(3). There would be no sanction for violating a condition of supervised release if, because a concurrent sentence had been imposed for the violation, the defendant served no additional time. That would be the case here if Hill were serving a sentence for a crime that was not also a

violation of the conditions of his supervised release (so there could be no argument that he had already been punished for that violation) and if, in addition, the concurrent sentence imposed for that violation would not result in lengthening the time he would spend in prison. In such a case, barring exceptional circumstances that we cannot at present envisage, it would be an abuse of discretion for the district judge to impose a concurrent sentence for the violation of supervised release, because it would mean that he had failed to impose any sanction for committing the violation.

█ That may not be our case, however. First, there is some overlap between the conduct for which Hill has been punished by the state and the conduct that put him in breach of the conditions of his supervised release. Were the overlap complete, one might argue that he had received at least some sanction for his conduct in violating those conditions. He engaged in conduct that violated the terms of his supervised release; he was sanctioned for that conduct, albeit under another rubric. But the overlap is not complete. The state punished Hill for forgery, attempted obstruction of justice, and theft. But he violated the conditions of his supervised release in other ways as well, notably by using cocaine—an express basis for the revocation of supervised release, 18 U.S.C. § 3583(g); see *United States v. Young*, 41 F.3d 1184, 1186 (7th Cir.1994), though not one mentioned by the district judge. For *this* conduct Hill received no punishment by the state.

But a second possibility is that Hill's concurrent sentence for violating the conditions of his supervised release is longer than his state prison term. If so, the residue would be an incremental punishment for these violations; he would still be in prison, for having violated the terms of his supervised release, even though he had completed the sentence imposed on him by the state for other (overlapping, but not perfectly so) conduct. Although nominally a sentence of three years, Hill's state sentence will probably require him to serve no more than 18 months, and it could be as few as 12 months. See 730 ILCS 5/3–6–3(a)(2), (3). With the abolition of federal parole, he will have to serve at least 18 months of his original federal sentence of 21 months for violating the conditions of his probation, 18 U.S.C. § 3624(b). The difference could be as much as six months—or as little as zero.

█ In these circumstances we cannot be certain that the district judge would have committed an abuse of discretion had he carried through his original intention to make Hill's federal sentence run concurrently with the state sentence. And therefore we cannot say that the judge's understandable but as we now hold (obviously without criticism of the district judge) erroneous decision that he *had* to make Hill's sentence fully consecutive, because of *Lewis*, was a harmless error. So Hill is entitled to be resentenced. But there is considerable question in our minds whether, given the incomplete overlap between the offenses for which the state has punished Hill and the grounds for the revocation of his supervised release, a *fully* concurrent sentence would be proper. For it might result in no incremental sanction for Hill's violation of the terms of his supervised release. We invite the judge to consider the possibility of making Hill's sentence partly consecutive and partly concurrent as a way of more precisely matching Hill's incremental punishment for violating the conditions of his supervised release to the gravity of his offense and other relevant circumstances.

We are not impressed by the length of his state sentence. So hardened has the nation become to murder, lucrative drug deals, and gigantic swindles that a "mere" thief is likely to seem undeserving of substantial punishment; but we do not think that so insouciant an attitude toward theft can be justified. We point out further that 18 U.S.C. § 3583(g) requires a defendant who has violated his supervised release by possessing illegal drugs "to serve in prison not less than one-third of the term of supervised release." That would be seven months for Hill. The statute does not say that the one-third must be served consecutively to any other sentence, but the spirit of the statute could be thought to require that. We leave that ques-

tion for resolution by the district judge in the first instance, as it has not been argued to us.

■ One loose end remains to be tied up, and we are done. The power of a district judge to *effectuate* his decision whether to impose a consecutive or a concurrent sentence is not entirely clear. Although Congress's intention in the Sentencing Reform Act to empower the district judge to make the decision is plain enough, see 18 U.S.C. § 3584; S.Rep. No. 225, 98th Cong., 2d Sess. 127 (1984); *United States v. D'Iguillont,* 979 F.2d 612, 615 (7th Cir.1992); *United States v. Terrovona,* 785 F.2d 767, 769–70 (9th Cir. 1986), overruled on other grounds in *United States v. Hardesty,* 977 F.2d 1347 (9th Cir. 1992), the Act is equally plain that the responsibility for deciding when the federal sentence shall be deemed to begin—whether when the defendant began serving his state sentence, which would make the federal sentence concurrent, or not until the defendant, having completed his state prison term, was delivered into federal custody, which would make the federal sentence consecutive—remains with the Attorney General of the United States. See 18 U.S.C. §§ 3585(a), 3621(b); cf. *United States v. Wilson,* 503 U.S. 329, 333–37, 112 S.Ct. 1351, 1354–55, 117 L.Ed.2d 593 (1992); *United States v. Koller,* 956 F.2d 1408, 1417 (7th Cir.1992). Does this mean that the Attorney General can override the district judge's determination? It would be premature to attempt to answer this question, as there is no suggestion that the Attorney General would attempt to do so in this case. Remember that the government's lawyers were content to allow the district judge to make the entire sentence concurrent—and not because they intended to advise their superiors to disregard the judge's order and make the sentence consecutive!

REVERSED AND REMANDED.