ILANA DIAMOND ROVNER, Circuit Judge.
 

 Michael A, Hale was sentenced to an imprisonment term of 63 months after pleading guilty to his participation in a cocaine distribution conspiracy. Having served that sentence, Hale was released from prison and began serving a five-year term of supervised release in Springfield, Illinois. Less than a month later, however, a warrant issued for Hale’s arrest. The warrant charged five separate violations of the terms of Hale’s supervised release, four of which related to the fact that he had moved from Springfield to Lexington, Kentucky on May 14, 1996, without the permission of his probation officer or the district court. Hale was arrested in Lexington on June 11 and was returned to Springfield. The district court eventually revoked Hale’s supervised release and sentenced him to an additional prison term of 30 months. Hale now appeals that sentence, arguing that it was plainly unreasonable under the circumstances. We affirm.
 

 I.
 

 This latest episode in Hale’s legal travails arose because he wished to serve his period of supervised release in Lexington, Kentucky, rather than Springfield, Illinois. But the probation office for the Eastern District of Kentucky denied Hale’s request to relocate to that district during the period of his supervised release. That office had prior experience with Hale, it turns out, because it previously had permitted Hale to serve the final portion of his prison sentence at a halfway house in Lexington. While at the halfway house, however, Hale twice violated program rules. The first violation occurred on January 5, 1996, when Hale was given a weekend pass to a specified Lexington location. That evening, numerous telephone calls to the pass site went unanswered, and it was after 1:00 a.m. the following morning when a staff member finally was able to reach Hale. Hale was instructed to return immediately to the halfway house, but he did not appear until after 4:00 p.m. that afternoon. Hale admitted that he had left the pass site the previous evening in order to go drinking. He was advised that leaving a pass site and consuming alcohol were both in violation of halfway house rules, and he was disciplined accordingly. He was further told that any additional rules violations would result in his termination from the program and his return to prison.
 

 During his stay at the Lexington halfway house, Hale was working a construction job for a friend in the area. In February 1996, Lexington was hit by an extended period of severe winter weather, which limited Hale’s construction work to only about two days per week. When he was not working, Hale found the environment at the halfway house to be “more mentally taxing than prison,” and he therefore decided to commit another rules infraction so that he would be returned to prison. Thus, on February 10,1996, while out on a pass, Hale had several beers at dinner and returned to the halfway house with alcohol on his breath. When a breath test confirmed that he had been drinking, Hale admitted to having consumed two to four beers with dinner. This incident resulted in Hale’s termination from the halfway house program and his return to a prison facility, consequences that Hale apparently expected and welcomed. Yet Hale’s conduct also caused the Eastern District of Kentucky’s probation office to rescind its earlier approval of his request for relocation, which
 
 *-1056
 
 would have allowed Hale to spend his five-year term of supervised release in Lexington. Hale did not anticipate this consequence, and he asked that the decision be reconsidered, but the Kentucky probation office persisted in its refusal to accept him.
 

 Frustrated, Hale began to investigate how he might avoid spending his five-year term of supervised release in Springfield, Illinois. After doing research in the prison law library and talking with fellow prisoners, Hale concluded that under section 7B1.4(a) of the Sentencing Guidelines, he would be required to serve an additional prison sentence of only 5 to 11 months if his supervised release was revoked as a result of a violation of its terms.
 
 [1]
 
 Hale’s research also uncovered this court’s decision in
 
 United States v. Lewis,
 
 998 F.2d 497, 499 (7th Cir.1993), which held that a Guidelines policy statement like section 7B1.4(a) was binding on the district court. Yet Hale failed to discover that we subsequently overruled
 
 Lewis
 
 in
 
 United States v. Hill,
 
 48 F.3d 228, 282 (7th Cir.1995). Thus, Hale believed that the district court would be required to sentence him to a prison term of between 5 and 11 months upon revoking his supervised release, and Hale found a sentence in that range an acceptable price to pay in order to hasten his move to Lexington.
 

 After his release from prison on May 3, 1996, Hale met with his probation officer in Springfield on May 6 and told her of his intention to deliberately violate the terms of his supervised release by moving to Lexington. The probation officer advised against it, cautioning that Hale could potentially receive a sentence upon revocation up to the statutory maximum of three years.
 
 [2]
 
 She recommended that Hale instead remain in Springfield, establish a good record for himself over a period of approximately nine months, and that she then would personally contact the Lexington probation office and request that Hale be accepted in that district for supervision. In conjunction with this May 6 meeting, Hale also submitted a urine specimen that subsequently tested positive for marijuana.
 

 On May 14, Hale made the unauthorized move to Lexington, although under the terms of his supervised release, he was prohibited from leaving the Central District of Illinois without the permission of his probation officer or the district court. Hale only notified his probation officer of the move on May 23, after learning that the officer had attempted to contact him via a home visit in Springfield the previous day. The terms of Hale’s supervised release required that he report a change of address or employment within 72 hours. In addition to those two violations and the positive marijuana test, Hale also failed to contact his probation officer on May 10 as she had requested, and failed to report as directed on May 14 and May 23 to provide additional urine specimens for drug testing. In the course of their May 23 conversation, Hale indicated to the probation officer that he would voluntarily surrender to the Marshals Service in Lexington at the appropriate time.
 

 Hale’s probation officer then filed a petition for revocation of his supervised release, which outlined the above violations. An arrest warrant issued, and Hale was subsequently arrested in Lexington on June 11. He was brought back to Springfield and appeared before the district court at a July 24 revocation hearing. At that hearing, Hale admitted to four of the five violations alleged in the petition, denying only the charge that he had used marijuana prior to the May 6 drug test. Hale conceded that these violations were sufficient to cause the revocation of his supervised release; indeed, Hale admitted that that had been his intention all along. He told the court that he had carefully weighed his options and decided that it
 
 *-1055
 
 was worth it to him to spend an additional 5 to 11 months in prison if he would then be permitted to move to Lexington. In Hale’s words, “I decided it was worth sacrificing a year of my life to get my life back, in a sense.... To do what was best for me, I felt.” (July 24,1996 Tr. at 26.)
 

 The district court revoked Hale’s supervised release and imposed a prison sentence of 30 months. The court looked to the range provided in U.S.S.G. § 7B1.4(a) (5 to 11 months) and decided that it was “totally unacceptable” under the circumstances. The court deemed such a sentence insufficient to deter Hale and others like him from willfully violating the terms of their supervised release in the future. The court did not, however, impose the maximum allowable sentence of three years, as the government had requested, because Hale at least had been candid with the court in divulging the reasoning behind his actions.
 
 [3]
 

 II.
 

 As we have emphasized in several recent decisions, the imprisonment ranges set out in section 7B1.4(a)’s Revocation Table are advisory rather than mandatory, as they are included in a non-interpretive policy statement, rather than in a guideline.
 
 See United States v. Doss,
 
 79 F.3d 76, 78 (7th Cir.1996);
 
 United States v. Lee,
 
 78 F.3d 1236, 1239 (7th Cir.1996);
 
 United States v. McGee,
 
 60 F.3d 1266, 1272 (7th Cir.1995);
 
 United States v. Hill,
 
 48 F.3d 228, 231 (7th Cir.1995). ■ In determining the sentence to be imposed upon the revocation of supervised release, the district court must consider the range designated in the Table, but the court is thereafter free to impose a sentence outside the designated range, subject to the maximum sentence allowable under 18 U.S.C. § 3583(e)(3).
 
 Doss,
 
 79 F.3d at 78;
 
 Lee,
 
 78 F.3d at 1239;
 
 Hill,
 
 48 F.3d at 231. Because no guideline establishes a mandatory range for such a sentence, the scope of our review is quite limited — we consider only whether the sentence imposed was “plainly unreasonable” under the circumstances. 18 U.S.C. § 3742(a)(4);
 
 Doss,
 
 79 F.3d at 79;
 
 McGee,
 
 60 F.3d at 1272.
 

 We cannot conclude that Hale’s 30-month sentence was plainly unreasonable in this case. The district court considered the 5 to 11 month range in section 7B1.4(a) to be “totally unacceptable,” in part because Hale had admitted both to the court and to his probation officer that he deemed such a sentence an acceptable price to pay in order to avoid the requirement that he remain in the Central District of Illinois during the period of his supervised release. The district court knew, then, that the possibility of receiving a sentence within that range was insufficient to deter Hale’s conduct and that a longer sentence was required. The court concluded that a sentence of 30 months would serve the purpose of deterring Hale and others in the future from repeating the conscious conduct of the defendant in this case. That sentence was six months shorter than the three years allowable under section 3583(e)(3). Although the government urged the district court to
 
 *-1054
 
 impose the maximum sentence in light of Hale’s conscious decision to so quickly violate numerous terms of his supervised release, the court imposed a lesser sentence in order to account for Hale’s honesty and candor with the court. That sentence was by no means plainly unreasonable.
 

 Hale nonetheless argues that in imposing his 30-month sentence, the district court failed to consider all of the factors enumerated in 18 U.S.C. § 3553(a). Hale maintains that the district court only considered the need for deterrence and ignored all of the remaining factors that a court is required to consider in passing sentence.
 

 Section 3583(e)(3) provides that in revoking a term of supervised release and imposing a prison sentence, the court should consider certain of the factors set forth in section 3553(a), including the nature of the offense and of the defendant’s history and characteristics, the need to afford adequate deterrence and protection to the public, applicable policy statements in the Sentencing Guidelines, and the need to avoid unwarranted sentencing disparities among similarly situated defendants.
 
 See Doss,
 
 79 F.3d at 79;
 
 United States v. Blackston,
 
 940 F.2d 877, 893 (3d Cir.1991),
 
 cert. denied,
 
 502 U.S. 992, 112 S.Ct. 611, 116 L.Ed.2d 634 (1991). Although the statute provides that these factors “shall” be considered (18 U.S.C. § 3553(a)), we have never required a sentencing judge to make findings addressed to each of the relevant factors at the risk of having the sentence vacated and the case remanded for resentencing. We have instead been satisfied if the sentencing court made comments reflecting that the appropriate factors were considered.
 
 See, e.g., United States v. Plantan,
 
 102 F.Sd 953, 957-58 (7th Cir.1996);
 
 United States v. James,
 
 40 F.3d 850, 879 (7th Cir. 1994),
 
 vacated in part on other grounds,
 
 — U.S. —, 116 S.Ct. 664, 133 L.Ed.2d 515 (1995),
 
 cert. denied,
 
 — U.S. —, —, 115 S.Ct. 948, 1160, 130 L.Ed.2d 891, 1116 (1995);
 
 United States v. Dillard,
 
 910 F.2d 461, 465 (7th Cir.1990). Other circuits have taken the same approach.
 
 E.g., United States v. LaBonte,
 
 70 F.3d 1396, 1411-12 (1st Cir.1995),
 
 cert. granted on other grounds,
 
 — U.S.—, 116 S.Ct. 2545, 135 L.Ed.2d 1066 (1996);
 
 Blackston,
 
 940 F.2d at 893-94;
 
 United States v. Graves,
 
 914 F.2d 159, 160 (8th Cir.1990) (per curiam);
 
 United States v. Lee,
 
 957 F.2d 770, 774-75 (10th Cir.1992).
 

 We are satisfied that the district court considered the relevant factors in imposing Hale’s 30-month sentence. The court referred to the sentence recommended by the Guidelines policy statement (5 to 11 months) but found that sentence “totally unacceptable,” in part because Hale had admitted that the recommended sentence was insufficient to deter him from violating the terms of his supervised release. The court also noted the calculated nature of Hale’s offense (“Hale knew full well what he was doing here, and he did it in a very purposeful way”), the fact that Hale already had twice violated the rules of the Lexington halfway house (“Lexington has had two opportunities with him, he’s violated their rules twice”), and the court’s own desire to deter others in the future from attempting to manipulate the system in the same way (“I’m concerned about the deterrent effect upon others. That they think that the system can be manipulated”). (July 24,1996 Tr. at 39-40.) Thus, the court considered the nature and circumstances of Hale’s offense (18 U.S.C. § 3553(a)(1)), Hale’s own history and characteristics
 
 (id.),
 
 and the need for a sentence that would deter similar conduct in the future (18 U.S.C. § 3553(a)(2)(B)). We will not invalidate a sentence that is not “plainly unreasonable” simply because the court did not also mention the need to avoid unwarranted disparities between similarly situated defendants.
 
 See
 
 18 U.S.C. § 3553(a)(6).
 

 Affirmed.
 

 [1]
 

 . That range applies to an individual with a criminal history category of III who commits a grade C violation of his supervised release.
 
 See also
 
 U.S.S.G. § 7B1.1 (describing various grades of violations).
 

 [2]
 

 . Hale’s underlying offense, participation in a conspiracy to distribute 709 grams of cocaine, carried a maximum penalty of 40 years in prison (21 U.S.C. § 841(b)(l)(B)(ii)), making it a class B felony.
 
 (See
 
 18 U.S.C. 3559(a)(2).) Under 18 U.S.C. § 3583(e)(3), a defendant serving a period of supervised release for a class B felony cannot be sentenced to a prison tenn of longer than three years upon the revocation of his supervised release.
 

 [3]
 

 . Before the district court, neither Hale nor the government suggested that the court invoke section 3583(h), a recent addition to the statute permitting a district court to impose a prison term upon revocation to be followed by an additional period of supervised release.
 
 See
 
 18 U.S.C. § 3583(h) (effective September 13, 1994);
 
 cf. United States v. McGee,
 
 981 F.2d 271 (7th Cir. 1992) (under preamendment version of section 3583, district court lacked the authority to impose an additional term of supervised release after imprisonment term upon revocation). This court held in
 
 United States
 
 v.
 
 Beals,
 
 87 F.3d 854 (7th Cir.1996), that application of section 3583(h) to a defendant like Hale whose offense was committed prior to the effective date of that subsection would violate the Constitution’s Ex Post Facto Clause. But other circuits have not necessarily agreed.
 
 See United States v. Brady,
 
 88 F.3d 225 (3d Cir.1996),
 
 cert.
 
 denied,-U.S. -, 117 S.Ct. 773, 136 L.Ed.2d 718 (1997);
 
 United States v. St. John,
 
 92 F.3d 761, 766-67 (8th Cir.1996);
 
 United States v. Evans,
 
 87 F.3d 1009, 1010-11 (8th Cir.1996);
 
 United States v. Wash,
 
 1996 WL 536563 (10th Cir. Sept. 23, 1996) (unpublished, citable under 10th Cir. Gen. Order of Nov. 29, 1993). Hale did not invoke section 3583(h) before the district court, and that court therefore did not address the applicability of that section to Hale's case. Hale's failure to rely on section 3583(h) is understandable, as it appears to have been his intention to avoid serving any period of supervised release. Hale also does not argue in this appeal that he should have been sentenced under section 3583(h). As a result, we need not consider whether that subsection could properly be applied to Hale's case.