142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth L. JONES, Defendant-Appellant.
 No. 97-3457.
 United States Court of Appeals, Seventh Circuit.
 May 12, 1998.
 ORDER
 
 1
 Chapter Seven of the U.S. Sentencing Guidelines is a collection of policy statements that are applicable to violations of probation and supervised release. In this case, after Kenneth Jones promptly violated the conditions of his supervised release upon completion of his prison sentence, the district court granted the government's petition to revoke his supervised release and sentenced him to a significantly longer period of time than the table in U.S.S.G. § -7B1.4 recommended. Jones appeals, claiming that the district court's decision was plainly unreasonable and that he is therefore entitled to resentencing. See United States v. McClanahan, 136 F.3d 1146, 1149 (7th Cir.1998). 18 U.S.C. § -3742(a)(4). In light of the character of the recommendations in § -7B1.4 and the standard of review that applies, we find that the district court acted within the scope of its authority and we affirm.
 
 
 2
 In 1992, Jones pleaded guilty to two counts of distribution of cocaine base, in violation of 21 U.S.C. § -941(a)(1). His initial sentencing range was 70 to 87 months, but as a result of the district court's decision to grant a government motion for a downward departure under U.S.S.G. § -5K1.1, he ended up with a sentence of 60 months' imprisonment to be followed by four years of supervised release. By all accounts, Jones was a model prisoner, but his good behavior ended soon after his release from prison on January 31, 1997. On February 12, 1997, while Jones was driving a car, the Springfield, Illinois, police signaled for him to pull over, apparently for some form of reckless driving (perhaps running a stop sign). Instead of obeying, Jones tried to flee. He ran through several stop signs, drove the car into a driveway, jumped out, and raced off on foot.
 
 
 3
 Although they briefly lost sight of him, the police found him a few blocks away hiding underneath a parked car. They ordered him to come out, but Jones refused. Ultimately, the efforts of two officers were required to drag him out from underneath the car. When he continued to resist being handcuffed, the police subdued him with a dose of pepper spray. They then tried to retrace his path. Along the way, they found a loaded, 9 mm. semiautomatic handgun that they later discovered had been stolen in 1995. The ground surrounding the gun was cold and frosted over, but the gun itself was warm to the touch. Because Jones had been traveling with other people, and because a laboratory analysis failed to reveal any latent fingerprints, Jones was ultimately not convicted of any offense in connection with the gun. (According to the "Petition for Warrant or Summons for Offender Under Supervision" he was initially charged with unlawful use of a weapon by a felon and resisting/obstructing a peace officer. He was also issued traffic citations for disobeying a stop sign (four citations), reckless driving, no valid driver's license, and fleeing and eluding a police officer.)
 
 
 4
 Jones did, however, plead guilty to reckless driving in state court. The other charges were dropped, and he was sentenced to once year of court supervision and fined $500. In spite of the fact that Standard Condition of Supervision # 11 of his federal supervised release required him to notify his probation officer within 72 hours of any arrest, conviction, or encounter with the police. Jones falsely indicated on his February 1997 monthly supervision report that he had not been arrested or named as a defendant in any criminal case during that month.
 
 
 5
 On March 11, 1197, Jones was again arrested, this time for the offense of permitting an unauthorized person to drive. He pleaded guilty to this offense and was fined $75, but he again failed to inform his probation officer of the arrest and he again falsely stated on his March monthly supervision report that he had not been arrested during that month. Jones also lied on his April and May 1997 reports by denying that any pending charges against him had been disposed of during those months. Last, on July 8, 1997, Jones failed to report for a scheduled urine drop, again in violation of the terms of his supervised release.
 
 
 6
 This course of events led the Probation Office to issue a Petition for Warrant or Summons for Offender Under Supervision on July 15, 1997. In a report prepared in conjunction with the petition, the office concluded that Jones's criminal history was III and that his most serious violation was classified as Grade C under U.S.S.G. § -7B1.1, which carries a recommended sentencing range of 5 to 11 months under U.S.S.G. § -7B1.4.
 
 
 7
 Notwithstanding this range, the United States decided to seek a 36 month prison sentence for Jones's supervised release violations, which is the maximum possible under the governing statute, 18 U.S.C. § -3583(e)(3). Jones argued for either an extension of the supervised release period or something in the middle of the 5 to 11 month range. The district court split the difference and sentenced him to 24 months in prison, observing that something harsher than the recommended sentence was "necessary in light of the nature of the offense, Defendant's history and characteristics, the need to afford adequate deterrence and the need to protect the public." Cf. 18 U.S.C. § -3553(a).
 
 
 8
 Jones concedes that we review the district court's determination under an extremely deferential standard, which requires us to ask only if it was plainly unreasonable for the district court to make the choice it did. He also concedes, as he must in light of governing law, that Chapter Seven of the Guidelines contains only policy statements, not binding rules for the district courts. McClanahan, 136 F.3d at 1152; United States v. Marvin, 135 F.3d 1129, 1142 (7th Cir.1998). He argues only that other cases in which district courts have imposed terms longer than those recommended in § -7B1.4 have involved facts far more egregious than his, and that we should therefore find that the district court's decision was plainly unreasonable. In United States v. Doss, 79 F.3d 76 (7th Cir.1996), for example, the defendant violated his supervised release by committing the same type of criminal activity for which he had originally been convicted, and he did so while he was carrying fictitious identification. The defendant there received a 24-month sentence instead of something between 8 and 14 months, as recommended by the Guidelines. Jones's supervised release in contrast, was not revoked because he committed additional drug offenses: to the contrary, he committed several Grade C violations. Reasoning that Doss sets the benchmark for sentences more harsh than the Guidelines recommend. Jones argue that his case falls below that mark.
 
 
 9
 He makes a similar argument about United States v. Hale, 107 F.3d 526 (7th Cir.1997), in which the court imposed a 30-month sentence in lieu of the 11 month maximum that the Guidelines would have supported. In Hale, the defendant was deliberately violating the conditions of his supervised release, so that he would not be annoyed by restrictive conditions when he was finally out of prison. Nothing indicates that Jones had this kind of manipulation in mind, and so he reasons that he fails to meet this "test" as well.
 
 
 10
 The fallacy in Jones's approach is the assumption that Doss and Hale exhaust the set of legitimate reasons why a district judge might decide that a more lengthy return to prison is necessary for a particular violator of supervised release conditions. They do not. Instead, constrained only by the statutory limits on additional incarceration, the district judge must consider all the factors pertinent to sentencing, as set forth in 18 U.S.C. §§ -3583(e), 3553(a). In so doing, the judge must give substantial weight to the recommendations of § -7B1.4, but those recommendations do not create a straight-jacket or even a strong presumption. They exist to provide guidance only and the judge must apply that guidance in light of the specific facts of the case before him or her.
 
 
 11
 In this case, Judge Mills carefully reviewed the record Jones had complied in the brief time he had been out of prison and he concluded that Jones needed a stiffer sentence than § -7B1.4 recommended. We note in this connection that even though both the prosecutor and the judge discussed the gun that the officers found apparently in Jones's path, the judge specifically stated that he was not relying on its presence in any way. Instead, he imposed the 24-month sentence for several reasons: the fact that Jones began disregarding laws less than two weeks after his release from prison, the circumstances of his wild attempt to evade the officers during the February chase, his dishonesty on the reporting forms, his failure to show up for the urine drop (which the judge viewed seriously because the original conviction had been for a drug offense), and, in general, the need to deter Jones and others from violating the conditions of supervised release. Hale, 107 F.3d at 529-30 (holding that a sentence above the suggested range, based in part on the district court's desire to deter others from similar conduct, was not plainly unreasonable); see also United States v. Roy, 126 F.3d 953, 954 (7th Cir.1997) ("The Guidelines factor a defendant's prior criminal history into his sentence in an effort to ... generally deter individuals from criminal behavior.") (emphasis added). Judge Mills' choice of a 24-month sentence, which falls almost exactly between the 36 months the government requested and the 11-month ceiling under the Guidelines, was not plainly unreasonable in light of these facts.
 
 
 12
 We therefore AFFIRM the district court's judgment and sentence.