NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3851
_____

UNITED STATES OF AMERICA

v.

MICHAEL DANTZLER,

Appellant.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-04-cr-00003-001)
District Judge:  Hon. Harvey Bartle, III
_____

Submitted Under Third Circuit LAR 34.1(a)
October 5, 2010

Before:  SCIRICA, FUENTES and JORDAN, *Circuit Judges*.

(Filed: October 27, 2010)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Michael Dantzler appeals from a September 21, 2009 order of the United States

District Court for the Eastern District of Pennsylvania revoking his supervised release and

sentencing him to 24 months of imprisonment and 12 months of supervised release.  We

will affirm.

## I.   Background

On January 6, 2004, a grand jury in the Eastern District of Pennsylvania returned a one count indictment charging Dantzler with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Dantzler was convicted by a jury and subsequently sentenced to a 72-month term of imprisonment, followed by 3 years of supervised release. Dantzler served his period of incarceration and began his period of supervised release in January 2009.

In the early-morning hours of August 12, 2009, several months into his supervised release, Dantzler and his wife, Carla, had an argument regarding an extra-marital affair that Dantzler was having.[1] The argument escalated when Dantzler retrieved a knife from the kitchen and sliced Carla's arm. Carla fled the home, got in her car, and called the police, with Dantzler in pursuit. Ultimately, Dantzler caught up with Carla and instructed her to "pull the ... car over" or he would "kill [her]." (App. at 50.) Carla pulled her car to the side of the road and Dantzler then pulled in front of her, put his car in reverse, and smashed into the front of Carla's car. Dantzler was subsequently apprehended by police.

On September 10, 2009, and September 21, 2009, the District Court held hearings to determine whether Dantzler had violated his supervised release. Testifying on his own behalf, Dantzler adamantly denied Carla's account of the events and claimed that it was Carla who had wielded a knife and pursued him in her car. The District Court found

---

[1]For simplicity, we will use Dantzler to refer to the appellant and Carla to refer to his wife.

2

Carla to be credible, accepted her version of the incident, and concluded that Dantzler had violated the terms of his supervised release by assaulting his wife.[2]

Since Dantzler was charged with a Grade A violation, the Sentencing Guidelines recommended a sentencing range of 18 to 24 months of imprisonment, based on his criminal history category of III. U.S.S.G. § 7B1.4(a). The statutory maximum for Dantzler's violation was 24 months of imprisonment.[3] *See* 18 U.S.C. § 3583(e)(3). The Government requested the maximum sentence due to the "significance of what happened," the "danger to the community" and to Carla specifically, the "little hope ... for [Dantzler's] rehabilitation," and the high "likelihood of recidivism." (App. at 197.) Dantzler, on the other hand, requested a sentence below the statutory maximum, which he claimed was justified in light of the "good effort" he made after his release from prison by working at a car wash and trying to open a cleaning business with his wife. (*Id*. at 199.)

Following Dantzler's allocution, the District Court imposed a sentence of 24 months of imprisonment and 12 months of supervised release. In doing so, the Court stated:

> Mr. Dantzler, I find your statements not credible. I think that you have engaged in the abuse of your wife, assault on your wife, battering your wife, and this type of conduct has got to

---

[2]The Government must establish violation of supervised release by a preponderance of the evidence. *See* 18 U.S.C. § 3583(e)(3).

[3]Since Dantzler's felon-in-possession conviction is a class C felony, he could not be sentenced to more than two years for a violation of his supervised release. *See* 18 U.S.C. § 3853(e)(3) ("[A] defendant whose term is revoked under this paragraph may not be required to serve on any such revocation ... more than 2 years in prison if such offense is a class C or D felony ... .").

3

> stop. And in order to protect society, and not only Ms. Dantzler, but the public in general from your conduct, and to punish you for what you have done, I'm going to commit you into the custody of the Attorney General of the United States, having revoked your supervised release, to two years to be followed by one year of supervised release.

(App. at 201.) After the District Court entered judgment, Dantzler timely appealed, alleging that his sentence is procedurally unreasonable.

## II. Discussion[4]

Applying an abuse of discretion standard, *United States v. Sevilla*, 541 F.3d 226, 230 (3d Cir. 2008), we review for reasonableness a sentence imposed for a violation of supervised release, *United States v. Bungar*, 478 F.3d 540, 542 (3d Cir. 2007). A district court abuses its discretion if it "based its decision on a clearly erroneous factual conclusion or an erroneous legal conclusion" or if it fails to adequately explain its chosen sentence. *United States v. Tomko*, 562 F.3d 558, 567-68 (3d Cir. 2009) (en banc). However, we review those objections that a defendant failed to raise before the District Court for plain error. *United States v. Watson*, 482 F.3d 269, 274 (3d Cir. 2007). Under plain error review, a defendant must establish that (1) the District Court committed error, (2) the error was plain, (3) the error affected his substantial rights, and (4) failure to correct the error would seriously impair the fairness, integrity or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 736 (1993).

---

[4]The District Court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231. Our appellate jurisdiction arises under 28 U.S.C. § 1291.

Dantzler argues that his sentence is procedurally unreasonable in two respects. First, he claims that, in sentencing him, the District Court improperly sought to punish him for the assault itself as opposed to the violation of the terms of his supervised release. Second, Dantzler asserts that the District Court erred in failing to address his argument for leniency based on his efforts to gain and maintain employment while on supervised release. We will review Dantzler's first argument for plain error, because he failed to object to his sentence on that basis, and his second argument for abuse of discretion. *See United States v. Vazquez-Lebron*, 582 F.3d 443, 445 (3d Cir. 2009) (finding that failure to raise procedural error before the district court resulted in plain error review); *Sevilla*, 541 F.3d at 231 (holding that where a party properly raises a "meritorious factual or legal issue" relating to the § 3553(a) factors, the party need not re-raise those issues at the conclusion of the sentencing proceeding to preserve an objection to the District Court's failure to address the issues).

A.    *Sanction for Breach of Trust*

Dantzler argues that the District Court committed a procedural error by considering the need to "punish [him] for what [he had] done." (App. at 201.) Dantzler reads the Court's pronouncement to reflect an intention to punish him for his violation conduct, *i.e.*, the assault on his wife, instead of for violating the terms of his supervised release. In support of his argument, Dantzler contends that, because 18 U.S.C. § 3583(e) does not expressly incorporate § 3553(a)(2)(A), which instructs a court to consider the need to "to provide just punishment for the offense," the District Court erred in

5

considering that factor. The government, on the other hand, argues that the District Court solely intended "to punish Dantzler for the breach of trust represented by his violation of supervised release." (Gov't's Ans. Br. at 24.)

When sentencing a defendant for violating the terms of supervised release, § 3583(e) instructs a sentencing court to consider certain factors listed in § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to protect the public from further crimes of the defendant. Furthermore, our precedent is clear that, consistent with the policy behind supervised release, "[a] district court's primary consideration in handing down a revocation sentence is the defendant's breach of trust." *United States v. Dees*, 467 F.3d 847, 853 (3d Cir. 2006); *see also Bungar*, 478 F.3d at 546 (finding the District Court's imposition of a 60-month sentence upon revocation of supervised release reasonable in light of the defendant's return to criminal activity, extensive history of violent crimes, and recent evidence of domestic violence, which constituted a "significant breach of the trust that the Court reposed in him" during its original sentencing); U.S.S.G. Manual Ch. 7, pt. A, introductory cmt. 3(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust ... ."). Indeed, Dantzler himself recognizes that "revocation courts may certainly punish breaches of trust... ." (Appellant's Reply Br. at 7.)

Reading the District Court's pronouncement in its entirety, we understand the Court to be punishing Dantzler for his breach of trust, not his violation conduct. The District Court first identified Dantzler's violation conduct ("I think that you have engaged

6

in the abuse of your wife, assault on your wife, battering your wife... .").  (App. at 201.)

The Court then shifted focus to address the relevant § 3553(a) factors in determining the

appropriate sentence to impose in order to fulfill its obligation to "adequately explain the

chosen sentence to allow for meaningful appellate review and to promote the perception

of fair sentencing." *Gall v. United States*, 552 U.S. 38, 50 (2007).  Specifically, the

District Court made findings concerning:  the need for the sentence to afford adequate

deterrence to criminal conduct ("I think you have engaged in the abuse of your wife,

assault on your wife, battering your wife, and *this type of conduct has got to stop.*") (App.

at 201 (emphasis added)), and the need for the sentence to protect the public from further

crimes of the defendant ("And in order to protect society, and not only Ms. Dantzler but

the public in general from your conduct....").[5]  (*Id.*)  The District Court then

acknowledged its ability to punish Dantzler which, as noted above, is appropriate.  While

the language on this point is less clear than it could have been, we decline to assume that

the Court failed to appreciate the distinction between sentencing for criminal conduct and

sentencing for a violation of supervised release.  In short, Dantzler's assertion that the

---

[5]While the sentencing court is required to "meaningfully consider" the relevant § 3553(a) factors, there is no requirement that the judge "make findings addressed to each of the relevant factors at the risk of having the sentence vacated and the case remanded for resentencing." *United States v. Hale*, 107 F.3d 526, 530 (7th Cir. 1997).  Rather, § 3583(e) is satisfied when the sentencing court "[makes] comments reflecting that the appropriate factors were considered." *Id.*

District Court punished him for the underlying criminal conduct rather than for the breach of trust represented by his violation conduct is unpersuasive.[6]

B.     *Consideration of Arguments in Mitigation*

Dantzler also argues that the District Court erred in failing to address his argument for mitigation during sentencing.  Specifically, Dantzler contends that the Court should have rewarded his efforts to find employment upon being released from prison, namely, that he worked at a car wash for two months after being released from custody and assisted his wife in starting a cleaning business.

A lengthy explanation is generally not required when a court sentences a defendant in accordance with the Sentencing Guidelines, such as here.  *See Rita v. United States*, 551 U.S. 338, 356-57 (2007).  Indeed, "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances."  *Id.* at 356.  Moreover, a court is not required "to discuss every argument made by a litigant if an argument is clearly without merit."  *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir.

_____

[6]Because we conclude that the District Court sanctioned Dantzler for breaching the court's trust by violating the terms of his supervised release, as opposed to punishing him for the violation conduct itself, we need not address Dantzler's argument concerning the proper construction of § 3583(e).  Regardless of that statutory construction question, we are confident district courts understand that, when considering a sentence for a violation of supervised release, they may not seek to punish any criminal conduct that constitutes the violation.  *See Johnson v. United States*, 529 U.S. 694, 700 (2000) ("Although [] violations of [supervised release] often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt.  Where the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense." (citations omitted)).

2006) (quoting *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006)). A court must only recognize and respond to those arguments that are not frivolous. *Id*.

The record reflects that Dantzler has exaggerated his efforts to find employment following his release from prison. At the revocation hearing, Carla testified that Dantzler was employed at a car wash for only two months following his release from prison before he quit because he was "sick of this [expletive]." (App. at 36.) He remained unemployed until the date of the evidentiary hearing six months later, despite his probation officer's efforts to help him find a job. Furthermore, the only progress made toward starting a cleaning business was registering and obtaining a license and dispersing flyers advertising the business, all of which Carla handled. Dantzler's precise role in this endeavor is unknown. Since there is an insufficient factual basis for Dantzler's assertion that he made a "good effort" (App. at 199) to find employment while on supervised release, the Court did not err by not expressly discussing that mitigation argument.

## III. Conclusion

For the foregoing reasons, we will affirm the sentence imposed by the District Court.