NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 13, 2020
Decided June 15, 2020

*Before*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-1621

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. |
| *v.* | No. 2:13-CR-111 |
| ADRON H. TANCIL, *Defendant-Appellant.* | Philip P. Simon, *Judge.* |

**O R D E R**

Adron Tancil pleaded guilty to RICO conspiracy and murder. He claims the district judge pronounced a clear sentence at the sentencing hearing but then issued a written judgment effectively adding about five years to the sentence. We vacate and remand.

## I. Background

In 2003, Tancil and co-conspirators shot and killed a man they suspected of stealing a Mexican drug cartel shipment of cocaine. No one was immediately charged

with the murder.

In 2010, Tancil severely beat his girlfriend. An Indiana jury found him guilty of attempted murder and criminal confinement and the judge sentenced him to 30 years.

In August 2013, while Tancil was in state custody for the 2010 attempted murder, the federal government charged him with various crimes, including the 2003 murder. The federal magistrate judge granted the government's motion for a writ of *habeas corpus ad prosequendum*. Tancil appeared in federal court on November 19, 2013, via the writ.

Tancil entered into a plea agreement. The government agreed to various terms favorable to Tancil, he agreed to plead guilty to two counts, and he waived certain appellate rights: "I expressly waive my right to appeal or to contest my conviction and all components of my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground other than a claim of ineffective assistance of counsel … ." On May 27, 2016, Tancil pleaded guilty to RICO conspiracy and murder.

The district judge held the sentencing hearing on March 28, 2019. Tancil confirmed his anticipated release date from state custody was November 2024. The judge announced a below-Guideline sentence of "216 months. It will be 108 months on [each count] to run consecutive with one another, but the entirety of the 216 months will run concurrent to the time that he served in his state sentence. And I'll make sure I delineate all of that in the judgment and commitment order."

Defense counsel asked for a recommendation Tancil receive credit for time served since being in federal custody. The prosecutor agreed, and said he thought it mandatory. The judge said:

> I think it depends on when he was writted into federal custody … but that will be up [to] the Bureau of Prisons to actually calculate, but that's the intention of the sentence I'm announcing today. And I'll make sure that—in fact, it was November 19th of 2013 was the date he was writted out and brought into federal custody, according to the cover page of the presentence report. So I will make sure the J and C reflects all of that so he gets full credit, okay.

The judge entered a written judgment four days later, on April 1, 2019. It said Tancil was sentenced to 216 months, to be served concurrently with the state sentence. It

recommended to the BOP that Tancil receive "credit for time served while in federal custody." On April 29, 2019, the United States Marshals returned Tancil to the Indiana correctional facility.

The BOP calculated Tancil's federal release date as July 28, 2034. Tancil argues the written judgment does not match the oral pronouncement, and the release date would hold him in confinement about five years too long. The government acknowledges the BOP's calculation seems to include no credit for the period when Tancil was subject to the writ between November 2013 and March 2019.

## II. Waiver?

First we must address whether Tancil waived this appeal. In his plea agreement, Tancil waived his right to appeal "all components of [his] sentence or the manner in which [his] sentence was determined or imposed." At the change-of-plea hearing, the judge told Tancil:

> [U]nder the terms of this plea agreement, it says that you are expressly waiving, that means you're giving up, your right to appeal any decision that I make that either leads to your conviction or the sentence that you ultimately receive. And essentially what that means is that I'm the last judge who is going to make any decisions on your case; and if you are unhappy or disagree with something that I do, you are stuck with those decisions. You are not going to be able to appeal them to a higher court. Do you understand that?

Tancil said he understood and said he was giving these rights up knowingly and voluntarily.

We interpret plea agreements under "ordinary principles of contract law, though with an eye to the special public-interest concerns that arise in this context." *United States v. Malone*, 815 F.3d 367, 370 (7th Cir. 2016) (quotation marks omitted). We allow "unambiguous terms in the plea agreement their plain meaning" and dismiss an appeal falling within the waiver's scope. *Id.*

This appeal does not fall under the waiver. Tancil is not appealing the components of his sentence or the manner in which his sentence was determined or imposed. Rather, he merely seeks the imposition of his actual sentence. His argument on appeal is that the oral sentence is unambiguous and therefore is the actual sentence, and

the written judgment should be changed to conform to the actual sentence so that the BOP's calculation of the release date matches the judge's intention.

### III. Merits

A. Analysis

The parties agree an unambiguous oral pronouncement of a sentence controls over a written judgment documenting the sentence. The oral pronouncement is the actual sentence because the Due Process and Confrontation Clauses require defendant's presence at the imposition of sentence. *United States v. Agostino*, 132 F.3d 1183, 1200 (7th Cir. 1997). So if there is a discrepancy between the unambiguous oral pronouncement and the written judgment, the oral pronouncement trumps and the written judgment should be amended. *United States v. Medina-Mora*, 796 F.3d 698, 700 (7th Cir. 2015). But the parties disagree about whether the oral pronouncement was unambiguous. We review *de novo*.

Tancil argues the oral pronouncement was unambiguous. The judge stated he wanted the sentence to begin running on November 19, 2013, the date Tancil was writted into federal custody. The judge promised: "I will make sure the J and C reflects all of that so he gets full credit, okay."

The problem is the written judgment simply recommends Tancil "be given credit for time served while in federal custody." And the BOP did not credit Tancil for the time between the writ (November 19, 2013) and the sentencing hearing (March 28, 2019).

A federal term of imprisonment commences on the date defendant is received in custody awaiting transportation to, or arrives voluntarily to begin service of sentence at, the detention facility. 18 U.S.C. § 3585(a). A defendant "shall be given credit" for any time he spent in official detention as a result of the subject offense before sentence for that offense commenced if that prior detention was not credited against another sentence. *Id.* § 3585(b).

A district judge may order a sentence to run concurrently with any portion of a state sentence defendant has not yet served. 18 U.S.C. § 3584(a). But a district judge may not backdate a sentence. *See United States v. Hill*, 48 F.3d 228, 234 (7th Cir. 1995) (the responsibility for deciding when the sentence begins remains with the Attorney General).

Here, Tancil was in the early years of a 30-year state sentence when he was

writted into federal custody on November 19, 2013. He was not sentenced for the federal crimes until March 28, 2019. The district judge stated his intention that Tancil receive credit for the time he served starting November 19, 2013, and specifically referenced this date. He promised to make that happen in the written judgment. But the way the written judgment was issued, that credit could not technically occur because Tancil already received credit for the period from November 19, 2013, to March 28, 2019, toward his pre-existing state sentence, as both parties noted on appeal. So what could the district judge have done to effectuate the orally pronounced sentence? He could have employed § 5G1.3(d) of the Guidelines to effectively credit the period between the writ and sentencing by reducing the total imprisonment term by the amount of that period. Such a downward departure should only apply to extraordinary cases, and should be clearly identified in the written judgment as a § 5G1.3(d) downward departure. U.S.S.G. § 5G1.3(d) & App. N. 4(E).

B. Sentence

Here is the math. The federal sentence is 216 months (18 years) concurrent to the state sentence.

Tancil argues the judge unambiguously wanted to give credit for the time served starting November 19, 2013. He promised to make sure the written judgment made that happen.

If a sentence of 18 years could start on November 19, 2013, it would end on November 19, 2031, not considering credit for good conduct time.

C. BOP's calculation

Based on the actual sentence, including credit for the time served while subject to the writ, the projected release date calculated by the BOP should be March 22, 2029.[1]

But the BOP's calculation (based on the written judgment) does not reflect the full credit the judge intended: March 28, 2019 (date of sentencing) + 18 years – 972 days = July

---

[1] November 19, 2013 (date of writ) + 18 years – 972 days (for good conduct) = March 22, 2029. When calculating the projected release date, the BOP accounts for projected, possible credit for good conduct time. For every year Tancil is incarcerated, he may receive up to 54 days of credit for good conduct time. 18 U.S.C. § 3624(b)(1). So Tancil might receive up to 972 days of credit for good conduct time on an 18-year sentence. 18 years x 54 days per year = 972 days of good conduct time. We express no opinion about whether Tancil will ultimately receive any credit for good conduct time.

30, 2034.[2]

The bottom line is July 2034 (BOP release date) is over five years too late.

D. Remedy

We agree with Tancil that the oral sentence was unambiguous. The transcript of the sentencing hearing makes clear that the judge wanted to give Tancil credit beginning November 19, 2013. He even mentioned that particular date. But the sentence cannot begin running on November 19, 2013, given the way the judgment is written and the rules the BOP must follow.

One potential way to bring the written judgment (and the resulting BOP calculation) into accord with the oral sentence might be for the written judgment to show a sentence of 141 months starting March 28, 2019,[3] and to reference U.S.S.G. § 5G1.3(d). The government noted and delineated (and argued against) this possibility in its appellate response. Tancil accepted this solution in his reply as the "clearest mechanism."

IV. Conclusion

We vacate the written judgment and remand with instructions to issue a written judgment comporting with the orally imposed sentence. We leave the precise figures to the district judge to consider, keeping in mind the rules the BOP must follow. A second sentencing hearing is not necessary.

---

[2] July 30, 2034, is a Sunday. The BOP listed Tancil's release date as July 28, 2034, the preceding Friday.

[3] A sentence of 141 months starting March 28, 2019, roughly equals a sentence of 216 months starting November 19, 2013, given 85% good-time credit. The time between the sentencing hearing on March 28, 2019, and a release date of March 22, 2029, is 3,647 days, which is approximately 85% of 4,291 days, which is approximately 141 months.